EZRA R. HALL, Respondent, *v.* JOHN S. SAMPSON, Appellant.

The execution of a chattel mortgage, in the usual form, invests the title in the mortgagee, subject to be defeated by subsequent performance of the condition.

The right of possession ordinarily follows that of property; and both would pass under such an instrument, in the absence of any express or implied agreement for the retention of the chattels by the mortgagor.

But when the instrument specifically defines the circumstances under which the right of possession is to vest in the mortgagee, the law implies an intent that it is to remain meantime in the mortgagor.

Until the possessory right of the mortgagor ceases, his interest is subject to seizure and sale, under legal process, at the instance of his creditors.

When the mortgagee, in good faith, takes possession of the bulk of the property, under a clause in the instrument authorizing him to do so whenever he deems himself unsafe, the possessory right of the mortgagor terminates; and he has no remaining interest in the mortgaged property, subject to levy and sale on execution.

APPEAL from the Supreme Court. The action was for the conversion of a piano-forte, which was claimed by the plaintiff under a chattel mortgage from Walpole, his brother-in-law, and which was taken by the defendant, as sheriff of Cortland, under an attachment in favor of John M. Jaycox and others against Walpole, whose interest in the piano was subsequently sold on execution in the attachment suit.

The referee, Hiram Crandall, on a former trial, directed judgment for the plaintiff, which was reversed on appeal by the General Term of the 5th district. The case, as there heard, is reported in 19 Howard, 481.

On the second trial, the referee again directed judgment for the plaintiff, which was reversed on appeal and a new trial ordered by the General Term of the 6th district. The case, as last heard, is reported in 23 Howard, 84. The reversal was on the sole ground of error in law. The following are the material facts, as established by the findings of the referee:

The plaintiff Hall resided in Groton, Tompkins county. His sister was the wife of Walpole, who resided at Homer, Cortland county, ten miles from Groton.

On the 8th of May, 1858, Walpole was justly indebted to the plaintiff in the sum of $700. To secure the payment of that amount, with interest one year after date, he executed a chattel mortgage, which was made in good faith and duly filed in the office of the town clerk of Homer within three days after its execution.

The mortgage covered a large amount of household furniture, embracing, among other articles, the locality of which was not stated, one piano, now at the house of Nathaniel Jones; one bookcase and drawers, now at the office of J. A. Gates; two dressing-tables, now in chamber; and five other enumerated articles, now at the Mansion House.

The fact is not stated in the mortgage, but the piano was held by Jones under a lease from Walpole, which was to expire on the 1st of October, 1858, and which had in fact terminated, before the sale by the defendant, under the execution in the attachment suit.

The following are the clauses in the mortgage, material to the question whether Walpole, the mortgagor, retained an interest in the piano-forte, subject to seizure and sale in the attachment suit: " I do hereby sell, transfer and assign to the said Ezra R. Hall, the property described in the following schedule, viz. : one piano (now at the house of Nathaniel Jones) ; one bookcase," &c. " Provided always, and this mortgage is upon the express condition, that if the said Matthew F. Walpole shall pay to the said Ezra R. Hall, &c., in one year from date, &c., then this transfer to be void and of no effect ; but in case of non-payment at the time, &c., Hall shall have full power to enter upon the premises of the said party of the first part, or any other place or places where the goods and chattels aforesaid may be, to take possession of the said property, to sell the same, and the avails, after deducting all expenses of the sale and keeping of said property, to apply in payment of the above debt ; and in case the said Hall should at any time deem himself unsafe, it shall be lawful for him to take possession of such property, and to sell the same at public or private sale, previous to the time above mentioned for the payment

of said debt, applying the proceeds as aforesaid, after deducting all expenses of the sale and keeping of said property."

On the 8th of May, when the mortgage was executed, Walpole told the plaintiff that he was going away, but did not say how soon. About two weeks afterward he left the State and went west. He started on Sunday morning, leaving his family in destitute circumstances; and he remained in Wisconsin or Minnesota, not returning to this State until after this suit was commenced, which was in December, 1858.

On the 29th of June, 1858, the defendant, as sheriff of the county of Cortland, attached the piano (then at the house of Jones) under process in the suit of Jaycox and others against Walpole, in the Supreme Court. It was duly inventoried and appraised. Judgment in the cause was perfected on the 26th of October, 1858, for $191.46, damages and costs, and on the same day the defendant levied on the piano under the execution in the attachment suit. On the 9th of November he removed it from Jones' to a hotel a few rods distant, where it was sold under execution on the 16th, and purchased by the plaintiffs for $34 in addition to the sheriff's fees. The sale was of the right, title and interest of Walpole in the piano. It was left by the defendant, at the hotel, in the possession of the purchaser. It was taken back to Jones', and the plaintiff was informed of that fact, but never took possession of it.

At the time the piano was attached, the mortgage was not due; and the plaintiff did not deem himself insecure, until the 5th of October, 1858, when he took possession of the mortgaged property except the piano, and two or three other articles. Some of the articles he sold and others he retained in his possession. He knew that the piano had been attached, and his reason for not taking it into his possession with the other property was, that it was at a distance of ten miles from his residence, and he had no convenient place to put it. No demand of the piano was ever made, and nothing was paid on the mortgage prior to the commencement of the suit.

*John H. Reynolds*, for the appellant.

*Andrew H. Green*, for the respondents.

PORTER, J.   The execution of the chattel mortgage invested the plaintiff with title, subject to be defeated by subsequent performance of the condition.   The right of possession ordinarily follows that of property, and both would have passed under the transfer, in the absence of any express or implied agreement for the retention of the goods by the mortgagor.   It has been held in some of the cases that no such agreement can be implied from provisions substantially like those contained in the present mortgage. (*Rich* v. *Milk*, 20 Barb., 616; *Chadwick* v. *Lamb*, 29 id., 518.)   The court below held otherwise, and in their conclusion on this branch of the case we concur.   The mortgage specifically defined the circumstances under which the grantee should become entitled to the right of possession; and this evinces the mutual intent of the parties, that, until it vested in the mortgagee, it should remain in the mortgagor. His possessory right was to terminate on failure to pay the debt at the time named, or at such earlier time as might be fixed by the election of the mortgagee, if in good faith he should deem himself insecure.   On the 29th of June, there had been no breach of the condition; and we entertain no doubt that Walpole had then an interest in the piano, which justified the defendant in taking it under the attachment. (*Carpenter* v. *Town*, Lalor, 72.)   But that interest terminated on the 5th of October, when the plaintiff, finding his debt insecure, exercised his right under the mortgage to treat the condition as broken.   His act in taking possession of the bulk of the property, was an assertion of his claim and an enforcement of the forfeiture.   From that time he had the right of possession as well as the legal title; and the authority of the sheriff ended with the interest of the debtor. (*Galen* v. *Brown*, 22 N. Y., 37, 41.)   The piano was then at the house of Jones, where the defendant subsequently seized it under his execution in the attachment suit, removed it from the premises and sold it at public auction.   No demand was made by the plaintiff, and none was necessary.   The officer had no authority for the seizure and sale of his prop-

erty.   It was the wrongful appropriation of the goods of one to pay the debt of another.

The order of the Supreme Court should be reversed, and the judgment on the report of the referee, should be affirmed.

All the judges concurred in the foregoing opinion, except that SMITH and MORGAN, JJ., were of opinion that the mortgagor had no leviable interest at any time after the execution of the mortgage, and PECKHAM, J., who was for affirmance, dissented.

Judgment reversed.