CALVIN L. HATHAWAY, Administrator, &c., of SAMUEL G. HATHAWAY, deceased, Appellant, *v.* JAMES BRAYMAN, Respondent.

A mortgagee of chattels cannot recover in an action for an alleged conversion thereof, against a purchaser from the mortgagor in possession, when such purchaser has sold and delivered the property to a third person, before default in payment of the mortgage, and before demand of possession by the mortgagee; although such mortgagee is empowered by the terms of the mortgage, which is duly filed, to take possession of the property at any time, in case he deems himself unsafe.

(Argued March 23d, 1870, by respondent and submitted by appellant; decided June 21st, 1870.)

APPEAL from a judgment of the General Term, sixth district, affirming a judgment of the County Court, which reversed a judgment in favor of the plaintiff's intestate, rendered in a Justice's Court.

·The action was for the alleged wrongful conversion of a mare.

On the 24th of September, 1863, Lawrence Stevens and John Bush, who were the owners of the gray mare in question, mortgaged her, together with a black mare and buggy wagon, to Samuel G. Hathaway, to secure the payment of a note for $125, executed by them to him, and payable on the 1st day of November then next, with interest. The mortgage was duly filed on the 26th day of September, 1863. By its terms it became due on the 1st of November, 1863. And it provided that "in case of non-payment at the time above mentioned, said Hathaway shall have full right to take possession of said property, sell the same at public or private sale, applying the avails of such sale in payment of said debt, after deducting all expenses and paying all charges; *and in case said Hathaway shall at any time deem himself unsafe, it shall be lawful for him to take possession of said property at any time,*" &c.

The mare and other mortgaged property continued in the possession of the mortgagors; and in October, 1863, Stevens, one of the mortgagors, traded her to the defendant and delivered her to him, in exchange for another horse. Afterward, and on the 26th day of October, aforesaid, the defendant traded her off to one Phillip Oliver, and delivered the possession of her to him, and Oliver kept her until about the middle of November, when she died. After the 26th day of October, she was never in the possession of the defendant, and he had no knowledge that she had been mortgaged to Hathaway, until sometime in February, 1864, when demand for her was made of him in behalf of Hathaway.

Hathaway recovered judgment before the justice for the value of the mare, fifty-eight dollars, and with costs; and the defendant appealed to the County Court upon questions of law only, where the judgment of the justice was reversed. Hathaway then appealed to the Supreme Court, and while the appeal was pending died, and the present plaintiff was substituted in his place. The Supreme Court affirmed the

judgment of the County Court; and the plaintiff was allowed to appeal to this court.

*John H. Reynolds*, for the appellant.

*A. McDowell*, for the respondent, cited *Hull* v. *Carnley* (1 Kern., 501); S. C., 17 N. Y., 202; *Goulet* v. *Asseler* (22 N. Y., 225); *Galen* v. *Brown* (22 N. Y., 41); *Hall* v. *Sampson* (35 N. Y., 274); *Baltes* v. *Ripp* (3 Keyes, 210); *Filmore* v. *Horton* (31 How., 424); *Lacker* v. *Rhoades* (45 Barb., 499); *Burt* v. *Dutcher* (34 N. Y., 493).

FOSTER, J. The only case referred to by the appellant's counsel which is in point, is that of *Chadwick* v. *Lamb* (29 Barbour, 518); and it was there decided, that an action to recover the value of personal property wrongfully converted, may be maintained by the chattel mortgagee, although the money secured by the mortgage is not yet due, if there is a clause in the mortgage which authorizes the mortgagee, at any time he shall deem himself insecure, to take possession of the mortgaged property and sell it to satisfy the debt.

But that doctrine was expressly repudiated by this court in *Hall* v. *Sampson* (35 N. Y., 277), where the court, PORTER, J., said : "The execution of the chattel mortgage invested the plaintiff with title, subject to be dissolved by subsequent performance of the condition. The right of possession ordinarily follows that of property, and both would have passed under the transfer, in the absence of any express or implied agreement for the retention of the goods by the mortgagor. It has been held in some of the cases, that no such agreement can be implied from provisions substantially like those contained in the present mortgage. (*Rich* v. *Milo*, 20 Barb., 616; *Chadwick* v. *Lamb*, 29 id., 518.) The court below held otherwise, and in their conclusion on this branch of the case we concur. The mortgage specifically defined the circumstances under which the mortgagee should become entitled to the right of possession; and this evinces the mutual

intent of the parties, that, until it vested in the mortgagee, it should remain in the mortgator.  His possessory right was to terminate on failure to pay the debt at the time named, or at such certain time as might be fixed by the election of the mortgagee, if, in good faith, he should deem himself insecure. On the 29th of June, there had been no breach of the condition ; and we entertain no doubt, that Walpole" (the mortgagor) "had then an interest in the piano which justified the defendant in taking it under the attachment."

The case of *Mattison* v. *Baucus* only decides that when the chattel mortgage is such, that the mortgagee is to have, possess, occupy and enjoy, the mortgaged property, whenever he shall demand the same, and he has taken the possession thereof by virtue of the mortgage, that it is not thereafter the subject of a levy upon execution against the mortgagor, although the mortgage debt had not become due.

Under the rule laid down in *Hall* v. *Sampson*, the rights of the mortgagor and mortgagee are the same as they would have been, if the mortgage had contained the express condition that the mortgagor was to continue in the possession until default in payment, or until the mortgagee should deem himself unsafe, and should in consequence thereof take possession.  And under such a mortgage as that, the rule clearly is that, prior to such default or taking possession, the mortgagor has an interest in the mortgaged property, which may be levied upon by execution against him, and will authorize the sheriff to take the property into his possession and sell it without reference to the mortgage, and the remedy of the mortgagee in such case is to follow the property into the hands of the purchaser and require its delivery to him or the payment of his mortgage debt. (*Hall* v. *Sampson*, *supra ;* *Hull* v. *Carnley*, 11 N. Y., 50 ; *Same* v. *Same*, 17 N. Y., 202 ; *Goulet* v. *Asseler*, 22 N. Y., 228.)

It is equally clear that, while the mortgagors retained possession, they could sell and deliver the mare to the defendant, and that he took all the interest the mortgagors had thereto, and held it subject to the mortgage, whether he was

aware of its existence or not; and on the 26th of October, there being no default in the payment, and no possession taken by the mortgagee, he had the right to dispose of it to Oliver, who also took it subject to the mortgage, and the remedy of Hathaway was to follow it and recover it from his possession. This he did not do, either under the safety clause or after default in the payment of the mortgage, but suffered it to remain in his possession until it died of a disease which it had when the mortgage was executed; and a demand for the mare, made upon the defendant in the following February, did not authorize him to support the action. The defendant had the right to purchase and exchange the mare away as he did, and he was not guilty of a conversion either in acquiring or parting with his interest in her. The judgment of the Supreme Court should be affirmed.

All concur.

Judgment affirmed.