## WOODSIDE v. ADAMS.

1. A landlord has no lien on the goods and chattels of his tenant for the payment of his rent, except such as is given by the statute. The statute which authorizes a distress for rent, expressly limits the right of distress to the goods and chattels of the tenant, and no other person. *Rev., p.* 309, § 8.

2. The lien of a bailiff seizing goods and chattels as a distress for rent, relates to the time of actual seizure under the warrant to distrain.

3. A chattel mortgage is in law a conveyance of the goods and chattels mortgaged, and passes the title of the mortgagor for the purposes for which it was made. The right of a mortgagee under a mortgage made

by a tenant of his goods and chattels upon the demised premises, is superior to that of a bailiff subsequently seizing them under a warrant to distrain for rent.

4. But a chattel mortgage in this state is regarded as a mere security for the debt, and does not entirely divest the property of the mortgagor. The interest of a mortgagor in the chattels mortgaged is such an interest as may be seized and sold under the ordinary process of law against him.

5. A bailiff having a landlord's warrant to distrain the goods and chattels of a tenant for rent, or an officer having an execution against him, may levy upon the interest of the tenant in goods and chattels which he has mortgaged to a third person, and may sell the mortgagor's interest in them, both before and after breach of condition, and even after the mortgagee has taken possession, without being liable to an action by the mortgagee; provided that in doing so no substantial injury be done to the interests of the mortgagee.

6. Placing a levy on chattels mortgaged, by virtue of process of distress or execution against the mortgagor, is not such a tortious act as will support trespass, trover or replevin by the mortgagee, unless the levy be accompanied by such acts or conduct as evince an intention to assert under it a right hostile to the rights of the mortgagee.

7. The statute (*Rev.*, p. 971, ? 2,) which provides that replevin may be brought for an unlawful detention of goods and chattels from their lawful owner, or the person entitled by law to the possession of the same, puts the action of replevin on the same footing as an action of trover. There must be an actual conversion, or a refusal to deliver on demand, which is evidence of a conversion, before the detention becomes unlawful.

8. To constitute an actual conversion of goods, there must be some repudiation by the defendant of the owner's right, or some exercise of dominion over them by him inconsistent with such right, or some act done which has the effect of destroying or changing the quality of the chattel.

In replevin. On case certified from the Atlantic Circuit Court for the advisory opinion of this court.

Argued at February Term, 1878, before the CHIEF JUSTICE, and Justices DEPUE, SCUDDER and KNAPP.

For the defendant, *J. E. P. Abbott* and *H. L. Slape.*

For the plaintiff, *D. J. Pancoast.*

The opinion of the court was delivered by

·DEPUE, J. The plaintiff claims title to the goods and. chattels in controversy, under a chattel mortgage, executed and delivered on the 1st of September, 1875, and filed in pursuance of the statute on the following day. On the 22d of August, 1876, the mortgagee took possession of the chattels mortgaged, and left them on the demised premises.

Early in September, 1876, the defendant, under a distress warrant issued by the landlord, distrained the goods. He had not removed them, or sold them when the writ of replevin was issued. He had done nothing when this suit was begun, but make a formal levy and seizure under the landlord's warrant. For this alleged wrong this suit was brought.

A landlord has no lien on the goods and chattels of his tenant for the payment of his rent, except such as is given by the statute. As against an officer seizing under execution, attachment, or other process against the tenant, he may claim all rent due, not exceeding one year's rent, which shall have accrued before the removal of the goods from off the premises. He may also subject goods and chattels, the property of the tenant, to distress and sale as a means of obtaining satisfaction for his rent; but his lien under the warrant to distrain will relate to the time of actual seizure under the process of distress. In the meantime the goods remain the property of the tenant, who may consume or use them, or sell them at his pleasure. A chattel mortgage is, in law, a sale of the goods, and passes the title to them for the purpose for which it was made.

The statute which authorizes a distress for rent, expressly limits the right of distress to the goods and chattels of the tenant, "and no other person." *Rev.*, *p.* 309, § 8. The chattel mortgage in this case having been made and delivered before the distress warrant was executed, the right of the mortgagee is superior to that of the landlord. *Hoskins* v. *Paul*, 4 *Halst.* 110, which holds that the goods of a tenant who had made an assignment for the benefit of his creditors, under the statute (*Rev.*, *p.* 36,) might still be seized and sold for rent accrued before the assignment, was decided upon a construc-

tion of the assignment act, and should not be extended to other cases.

No doubt is entertained that the title of a prior mortgagee of chattels is, in law, as well as in equity, superior to that of a bailiff subsequently seizing them under a distress warrant, or an officer levying under execution against the mortgagor. It is equally clear that if the bailiff or officer seize the chattels and sell them, in exclusion or defiance of the rights of the mortgagee, such an exercise of dominion over them will be an invasion of the rights of the mortgagee such as will support an action.

But will trespass, trover or replevin lie at the suit of the mortgagee, for the mere levying on the chattels mortgaged under process of distress or execution against the mortgagor? Manifestly not, unless the levy be accompanied by such acts or conduct as evince an intention to assert under it a right hostile to the rights of the mortgagee. The placing of a levy on the mortgaged property is, *per se*, no more a trespass or conversion, or intermeddling with the property of the mortgagee, than the taking of a second mortgage, or a conveyance of property, real or personal, which is subject to a prior mortgage. An execution creditor who has levied on a chattel interest covered by a mortgage may go into equity for the redemption of the mortgage, the same as a judgment creditor at law is entitled to redeem an encumbrance upon lands; and by his levy on the chattels mortgaged, will acquire a preference according to his legal priority. *McDermutt* v. *Strong,* 4 *Johns. Ch. R.* 687; *Disborough* v. *Outcalt, Saxton* 299; *Mechanics' Building and Loan Ass'n* v. *Conover*, 1 *McCarter* 219; *S. C. on appeal, sub nom. Herbert* v. *Mechanics' Building and Loan Ass'n*, 2 *C. E. Green* 497. The very purpose of the levy may be the acquisition of the property rights of the mortgagor—his equity of redemption. This seems from the state of the case to have been the posture of this case, when the writ of replevin was sued out.

But it was assumed by the court, and considered here by counsel, that the further question was involved, whether an

officer holding process of distress or execution against a mortgagor, subsequent to the date of the mortgage, could seize and sell the chattels mortgaged, without liability to an action by the mortgagee, in trespass, trover or replevin. From what has already been said, it is manifest that this question can arise only when the seizure and sale are of the property of the mortgagor in the chattels. Succinctly stated, the question is whether a mortgagor of chattels has such an interest in the chattels mortgaged as may be seized and sold under the ordinary process of law.

The proposition here stated has become one of great importance, since the act providing for the registry of chattel mortgages has placed these instruments on a substantial basis, and made them safe and convenient securities for the payment of money. I am not aware that this subject has ever been passed upon judicially by the courts of the state. It was not involved in *Miller* v. *Pancoast*, 5 *Dutch.* 250. In that case the points in litigation were, whether a mortgagee of chattels could maintain an action against the sheriff for selling them under an execution against the mortgagor before the time had elapsed for payment of the money secured by it, and whether possession by the mortgagor of chattels mortgaged was or not, *per se*, fraudulent. It is apparent, from the reading of the case, that the sale by the sheriff was in defiance of the title of the mortgagee, for the very purpose of disputing the validity of his mortgage. Whether the action should have been trover or a special action on the case was a matter of comparatively little importance; and the complete annihilation of the title of the mortgagor by the mortgage was not necessarily involved in affording the mortgagee a remedy by action for the wrong done. The Court of Appeals of New York has decided that where the mortgagor remains in possession before default, under a clause in the mortgage enabling him to do so, the appropriate action against an officer actually converting the chattels under a sale by virtue of an execution against the mortgagor, is an action on the case for the injury to his reversionary estate. · *Manning* v. *Monaghan*, 28 *N. Y.*

585; *Goulet* v. *Asseler*, 22 *N. Y.* 225. In *Hall* v. *Snowhill*, 2 *Green* 9, case for an injury to his reversionary interest was regarded as the proper form of action by a mortgagee of chattels before default, against a sheriff who took the chattels mortgaged out of the possession of the mortgagor, and converted and absolutely disposed of them.

I consider the point really decided in Miller *v.* Pancoast, to have been simply that a mortgagee before default may sue for the injury to his rights under the mortgage; and that the question raised in this case, whether the mortgagor has a leviable interest in chattels mortgaged, is an open question, to be decided on legal principles, unfettered by any adverse judicial precedents.

At common law, a mortgage created an immediate estate in the mortgagee, and vested in him, *eo instante*, an actual estate with a right of immediate possession, subject only to be defeated by the payment of the mortgage money. As a conveyance, its operation was to divest completely the title of the mortgagor, who thenceforth had no interest in the property, except a mere equitable right of redemption. This rule of law was applicable alike to mortgages of real and personal property. In *Sanderson* v. *Doe, ex dem. Price*, 1 *Zab.* 646, *note*, it was held by the Court of Errors that an actual estate in possession did not vest in the mortgagee of lands until the condition was broken by default in the payment of the mortgage money. This decision, though perhaps not satisfactory to the profession when it was promulgated, has come to be regarded as settled law, and it may now be considered the established doctrine of the courts of this state, that a mortgage of lands is not a common law conveyance on condition, but a mere security for the mortgage debt, the legal estate being considered as subsisting in the mortgagee only for that purpose. *Jackson* v. *Turrell*, 10 *Vroom* 329; *Kircher* v. *Schalk, Id.* 335. The consequence of these decisions is the separation, in legal contemplation, of the estate of the mortgagor from that of the mortgagee, and the recognition of an actual and distinct legal estate in each. The legal estate of

the mortgagee, after breach of condition, has all the incidents of a common law title, for the purposes of an action of eject-ment; but its existence is, nevertheless, regarded as compat-ible with a legal estate at the same time, in the mortgagor. This legal estate of the mortgagor is capable of conveyance, mortgage, or a sale under execution against him, at any time before his estate is divested by foreclosure. For I think it is a legitimate deduction from the principles adjudged in the cases cited, that the estate of the mortgagor is susceptible of conveyance, mortgage and sale under execution, until it is actually divested by a release or foreclosure. The cases clearly recognize the equity of redemption of a mortgagor as a legal estate, and as such it must subsist until extinguished in the manner in which legal estates are by law extinguishable. Entry on the mortgaged premises does not work an extin-guishment. It merely operates to transfer the possession to the mortgagee, with all the rights that actual possession con-fers, leaving the ultimate rights of the parties unaffected.

In *Wilson* v. *Gray*, 2 *Stockt.* 323, Chancellor Williamson held that the same doctrine prevailed in this state as to the respective rights of mortgagor and mortgagee of personal prop-erty, and as to the character of their respective interests, as governs mortgages of real property. Following up this state-ment of the principle, the Chancellor further held that the interest of the mortgagee in personal property—the possession whereof remained with the mortgagor—before condition broken, could not be taken in execution as the property of the mortgagee, but that the interest of the mortgagor was legally the subject of execution and sale. The Chancellor admits that the weight of authority elsewhere was in a different direction, and puts his decision on the law of New Jersey, by which an equity of redemption has always been the subject of sale, not by virtue of any statute, but, as the Chancellor ex-presses it, " because our courts of law followed the good sense of courts of equity in this respect, in spite of mere technicali-ties, and considered the mortgagor, as he actually is, the real owner of the property." I fully concur in these views as a

correct exposition of the law of this state on this subject. They serve to bring the law in relation to mortgages of real and personal property into a state of harmony, and remove the anomaly of permitting personal property to be placed in a condition, by means of a mortgage on it, of not being subject to execution and sale, as against either of the parties whose interests therein represent the entire title. Furthermore, the act of 1869 clearly recognizes the suspension of the right of possession by the mortgagee of the chattels mortgaged, and of his ability to maintain such actions as are founded on a possessory right, during the continuance of the credit given for the payment of the mortgage money. It provides that every . chattel mortgage shall vest in the mortgagee the right of possession of the chattels mortgaged, so far as may be necessary for the purpose of preventing their removal from the county in which they were at the time of the execution or delivery of the mortgage, and of recovering them in case of such removal. *Rev., p.* 708, § 36. In the courts of New York, in a series of well reasoned cases, it has been adjudged that where the mortgagor of a chattel has a right of possession for a definite period, he has an interest which may be seized and sold by execution, and the purchaser acquires the right of possession and the absolute ownership, subject to the encumbrance. *Bailey* v. *Burton*, 8 *Wend.* 339; *Hall* v. *Carnley*, 1 *Kernan* 501; *Gould* v. *Asseler*, 22 *N. Y.* 225; *Manning* v. *Monaghan*, 28 *N. Y.* 585; *Hathaway* v. *Brayman*, 42 *N. Y.* 322. In *Hall* v. *Sampson*, 35 *N. Y.* 274, it was considered that an agreement that the mortgagor should continue in possession until default was implied from the naming of a future day for payment, with a clause providing for entry and possession by the mortgagee upon the occurrence of the default.

The authorities cited, I think, establish the correct principle to be that the entire property in the chattels mortgaged does not pass to the mortgagee, *eo instante*, on the execution of the mortgage, and that the mortgagor, notwithstanding the mortgage, has a property in the chattels remaining in him which is subject to execution and sale before breach of the con-

dition.   During the continuance of the possessionary right of
the mortgagor, the rights of the mortgagee and mortgagor
correspond with those of the lessor and lessee of chattels
during the term of the demise.   A lessee of chattels during
his term has such property in them as may be seized and sold
under execution against him, if the seizure and sale be of his
estate therein only, and no substantial injury be done to the
rights of the lessor.   *Duffill* v. *Spottiswoode*, 3 *C. & P.* 435 ;
*Dean* v. *Whitaker*, 1 *Id.* 347 ; *Tancred* v. *Allgood*, 4 *H. & N.*
438 ; *Van Antwerp* v. *Newman*, 2 *Cow.* 543 ; *Graffin* v. *Jack-
son*, (*infra*, *p.* 440.)   In *Gordon* v. *Harper*, 7 *T. R.* 9, Lord
Kenyon, speaking of an action by the lessor against an officer
selling goods leased to a tenant, under an execution against
the lessee, says : " No doubt could have been made but that
the sheriff might have seized them under an execution against
the tenant, and the creditor would have been entitled to the
beneficial use of the property during the term."   In *Bradley*
v. *Copley*, 1 *C. B.* 685, it was held that under a bill of sale of
chattels, with a condition of redemption on payment of debt
and interest on demand, and a further proviso that the mort-
gagor should continue in possession until default, the mortga-
gee had not such a right of possession as would enable him to
sue in trover an officer selling them under an execution against
the mortgagor.   And in *Wheeler* v. *Montefiore*, 2 *Q. B.* 133,
a like decision was made where the mortgage contained no
stipulation for possession by the mortgagor, and his right to
possession until default was inferred from the naming of a
future day for payment of the mortgage money.

    The courts of New York in the cases already cited, hold
that an officer selling the interest of a mortgagor rightfully in
possession of the chattels mortgaged, is not liable in either
trespass or trover, at the suit of the mortgagee.   And it will
be found that those decisions of the English courts, and of
the courts following the English cases, which hold that a
mortgage of chattels entirely divests the mortgagor of prop-
erty in chattels mortgaged, are founded on the common law
doctrine that a mortgage is essentially, in law, a conveyance,

which operates immediately to transfer the property and right
of possession, without regard to the time of payment of the
money secured by it—a doctrine that has been thoroughly re-
pudiated in this state.

Thus far the cases cited have tended to show that a mort-
gagor of chattels has a property in them until default in the
payment of the mortgage money, which may be subjected to
sale under process of execution or distress.    But on what
principle can it be held that his property terminates when
the mortgage money becomes due and payable?    The mort-
gage is, in substance, a mere security for the debt.    It gen-
erally provides for payment at a specified day, but, in fact, in
most instances, the time of payment is tacitly extended to
accommodate the wants and convenience of the parties.    Fre-
quently the forfeiture and day of payment are made dependent
on a contingency such as a levy under execution against the
mortgagor, or an attempted removal out of the county.
Why adhere to form, and sacrifice the substance?    In fact,
the property in the chattels mortgaged does not become abso-
lute in the mortgagee when his money becomes due.    If the
mortgagor, with the consent of the mortgagee, retains the
possession of the chattels mortgaged after condition broken,
he may recover their full value in trespass against an officer
seizing them, as the property of a third person.    *Luse* v.
*Jones,* 10 *Vroom* 707.    But, as against the mortgagor, or
those claiming under him, the mortgagee can recover in tres-
pass damages only to the extent of his interest in the prop-
erty.    *Outcalt* v. *Durling,* 1 *Dutcher* 443.    If the mortgagee
takes the chattels mortgaged into his possession, he cannot
keep or dispose of them absolutely as his own.    If he retain
them, they will be liable to redemption by the mortgagor ;
and when the mortgagee's debt is satisfied, his title ceases.
*Freeman* v. *Freeman,* 2 *C. E. Green* 44.    A private sale by
the mortgagee after default is unauthorized ; and if he so
sells them, he must account to the mortgagor for their full
value.    *Bird* v. *Davis,* 1 *McCarter* 467. . If, having taken
them into possession, he sells part of them, and realizes suffi-

cient to pay the debt and expenses, his title to the residue is extinguished, and if he afterwards makes a further sale, he will be liable in trover at the suit of the mortgagor for the sale of such residue. *Charter* v. *Stevens*, 3 *Denio* 33. Whenever the question is directly presented, courts of law, as well as courts of equity, regard a chattel mortgage as a mere security, and recognize an interest in the mortgaged chattels, subsisting in the mortgagor after default, and possession taken until his rights are extinguished by foreclosure or sale, analogous to the rights of a mortgagor of lands after default and entry by the mortgagee, until his rights are extinguished by proceedings in foreclosure. The expression so frequently used in the opinions of courts and in the books, that a mortgagee of chattels after default has an absolute title, has only a qualified meaning since the common law doctrine of the nature of a mortgage has been departed from. After his debt has become due, the mortgagee has the absolute legal title in the sense that he may resort to such remedies as a legal title draws to it for the enforcement and protection of his security, and to compel the payment of the mortgage money, just as a mortgagee of lands after default is regarded as having a legal title for the purposes of an action of ejectment to recover possession of the mortgaged premises. But still the mortgagor is considered as having an interest in the chattels mortgaged, which continues, notwithstanding the mortgagee has recovered the chattels, or taken them into possession in virtue of his legal title, until the mortgagor's interest is extinguished by foreclosure or a sale in the manner provided by law.

Nor is the fact that there are present and vested property rights in several persons in chattels, an insuperable obstacle in the way of the sale of the interest of one of them under execution against him. The sale of goods leased for a term, under an execution against the tenant, is an instance in which it may be done. Goods on demised premises, of which the tenant is owner jointly with another, may be distrained, and his interest therein sold for the payment of the rent. *Allen*

v. *Agnew,* 4 *Zab.* 443. The interest of one of several part-
ners in the partnership property may be seized and sold for
the payment of his individual debt, the purchaser acquiring
only the share of the execution debtor in the surplus of the
partnership effects, after all the firm obligations are paid.
*Brown* v. *Bissel,* 1 *Zab.* 46 ; *Renton* v. *Chaplain,* 1 *Stockt.*
62; *Johnson* v. *Evans,* 7 *M. & G.* 240 ; *Phillips* v. *Cook,* 24
*Wend.* 389; *Waddell* v. *Cook,* 2 *Hill* 47 ; 1 *Am. Lead.
Cases* (472) 578, *notes to In matter of Smith.* Assuming
that a mortgage is a mere security for the debt—and such I
conceive to be the established doctrine of the courts of this
state—I fail to perceive any reason why the rule above stated,
with respect to sales under execution or distress, of the interest
of one partner in partnership property, or of the interest of
one of several joint tenants of goods should not be applied to
the interest of a mortgagor of chattels, both before and after
breach of condition, and even after the mortgagee has taken
possession, if no substantial injury be done to the rights of
the mortgagee. The property mortgaged may be a single
chattel of considerable value, or the machinery in a factory,
or the stock of goods in a store, which may be sold in entirety,
or in parcels, subject to the lien of the mortgage, without any
appreciable injury to the rights of the mortgagee. To permit
the officer to take such possession only as will enable him to
make a legal sale under his execution, would be consonant
with public policy, and consistent with sound legal princi-
ples, provided that, in doing so, no substantial injury be done
to the interests of the mortgagee.

With this qualification the rights of the mortgagee will be
adequately protected. He may take possession and sell for
the satisfaction of his debt without the aid of the Court of
Chancery. *Freeman* v. *Freeman,* 2 *C. E. Green* 44. On a
threatened sale under an execution against the mortgagor, in
a manner prejudicial to his interests, he may go into equity
for an injunction before as well as after breach of condition
by non-payment of the mortgage debt. *Long Dock Co.* v.
*Mallery,* 1 *Beas.* 431 ; *Smithhurst* v. *Edmunds,* 1 *McCarter*

408.   If the sheriff sells in defiance or exclusion of his rights, he may sue for the injury before as well as after the mortgage money is due.   *Miller* v. *Pancoast,* 5 *Dutcher* 250.   If the mortgagee is in, or is entitled to immediate possession, and the officer being apprised of his lien, sells the whole property, and not merely the right of the defendant subject to the lien, he becomes a trespasser, and the mortgagee may maintain replevin, (*Wheeler* v. *McFarland,* 10 *Wend.* 318 ;) and though the officer pretends to sell only the right, title, and interest of the mortgagor, yet if he and the creditor, at whose instance he acts, assist and encourage purchasers in removing the property, they will be liable to an action as for an actual conversion.   *Underhill* v. *Reinor,* 2 *Hilton* 319.   A mortgagee needs no further or additional remedies, and it is not necessary for the protection of his interests to endue him with power of practically preventing the creditors of the mortgagor reaching the interest that remains in him, and applying it in payment of his debts by compelling a redemption by payment of the mortgage debt, before a sale under the execution can be effected.   In many cases the equity of redemption of the mortgagor would produce enough on a sale under execution to satisfy the demands of a creditor who might be unable or unwilling to redeem the mortgage before a sale, or be deterred from attempting to collect his debt out of his debtor's property by fear of an action for a trespass ; and since the legislature, by the recording acts, has placed chattel mortgages on a secure basis, which they had not before, it is a matter of frequent observation that a chattel mortgage is the most effectual cover that can be thrown over the property of a debtor to shield it from his creditors.

In my judgment the true rule on this subject is that adjudged in *Fugate* v. *Clarkson,* 2 *B. Monroe* (*Ky.*) 41, where it was held that the landlord might distrain the property of the mortgagor in chattels mortgaged, and until he disposes of the goods by removal or sale, or does some other tortious act which makes him a trespasser *ab initio,* the mortgagee cannot maintain an action against him ; that the

mortgagee should wait until the sale, when, if the property only of the mortgagor shall have been sold, the mortgagee will be entitled to a restitution of possession from the landlord ; and if the absolute title should have been illegally sold, he may replevy the property, either as against the landlord before delivery to the purchaser, or as against the latter, if he shall have taken it wrongfully into his possession.

In the present case the property in question consisted of the furniture in a hotel at Atlantic City. The mortgagee took possession of it on the 22d of August, 1876. He did not remove the goods. He merely inventoried and appraised them, and advertised them to be sold on the 6th of September following. His possession of the property was purely a matter of form. On the 4th of September the landlord's warrant was delivered to the defendant, and executed by him by a levy on the furniture. The defendant made an inventory of the goods, but did not remove or sell them before the writ of replevin was sued out. So far as is disclosed by the case laid before this court, nothing whatever was done by the defendant which interfered with the plaintiff's rights under his mortgage. For aught that appears, the plaintiff might have proceeded with the sale, which was advertised, without any interference or embarrassment consequent upon the execution of the distress warrant, leaving to the landlord the surplus goods that remained after satisfaction of the mortgage debt.

Formerly, replevin could be maintained only when the goods and chattels were so taken as that an action of trespass *de bonis asportatis* would lie. *Bruen* v. *Ogden,* 6 *Halst.* 370. By statute, the action is also given for an unlawful detention of goods and chattels from their lawful owner, or the person entitled by law to the possession of the same. *Rev., p.* 971, § 2. But this statute does not confer a right on the owner of goods and chattels to maintain replevin in all cases where his goods are in another's possession. There must be an unlawful detention. In that respect, the action of replevin is put on the same footing as the action of trover. There must be an actual conversion, or a refusal to deliver on demand, which is evi-

dence of conversion, before the detention becomes unlawful. To constitute a conversion of goods there must be some repudiation by the defendant of the owner's right, or some exercise of dominion over them by him inconsistent with such right, or some act done which has the effect of destroying or changing the quality of the chattel. *Heald* v. *Carey*, 11 *C. B.* 977; *Fouldes* v. *Willoughby*, 8 *M. & W.* 540.

The Circuit Court is advised accordingly.