34  57
59  41
34h 57
f48ad348
34h   57
77 AD² 646

# EBENEZER ALLEN, Respondent, v. ARLON M. VOSE, Appellant.

*Chattel mortgage — when the mortgagee may take possession under a clause authorizing him to do so when he deems himself unsafe.*

A chattel mortgage given upon a growing crop of wheat and a mare, provided " that in case the said Arlon M. Vose (the mortgagee) shall at any time deem himself unsafe it shall be lawful for him to take possession of the said property and to sell the same at public or private sale previous to the time above mentioned for the payment of said debt, applying the proceeds upon the mortgage after deducting all expenses of sale and keeping said property." On July seventeenth, the crop having proved to be a failure, the mortgagor sold his interest therein to the defendant for ten dollars, which was applied on the debt. The mortgage was given for $100. The mare was worth not more than fifty dollars. On July eighteenth the mortgagee took possession of and sold the mare under the above mentioned clause.

*Held*, that he had reasonable cause to deem himself unsafe and was justified in acting as he did.

The right of a mortgagee to take possession of the mortgaged property under such a clause, considered by Haight, J., and the cases bearing thereon collated.

Appeal from a judgment, entered in Steuben county upon the report of a referee, in favor of the plaintiff, for $130.97, besides costs.

*D. M. Darrin*, for the appellant.

*J. W. & H. J. Dininny*, for the respondent.

Haight, J.:

This action was brought to recover damages for an alleged conversion of a mare and for damages resulting to her colt, by reason

·of taking her from it before it was old enough to wean. The defense was justification under a chattel mortgage. On the 1st day ·of April, 1875, the plaintiff entered into a contract in writing with the defendant, in and by the terms of which he leased the defendant's farm in the town of Thurston, Steuben county, for the term ·of one year, to work upon shares, and in the fall of the year to sow and put in a quantity of winter wheat and rye, and to harvest the same the next summer when the crops should mature. The plaintiff, pursuant to the lease, entered into the possession of the farm ·and worked the same during the term embraced in the lease. On the 18th day of April, 1876, the parties had an accounting and ·settlement of their transactions under the lease, whereby it was found and agreed that the plaintiff was indebted to the defendant ·in the sum of $100, to secure which the plaintiff executed and ·delivered to the defendant a chattel mortgage upon all his interest in the winter wheat and rye growing upon the farm and also in one ·sorrel mare, conditioned that the plaintiff would pay the defendant the sum of $100, and the interest thereon on the 1st day of December, 1876. The mortgage contained the following clause : " That in case the said Arlon M. Vose shall at any time deem himself unsafe, it shall be lawful for him to take possession of the said property and to sell the same at public or private sale previous to the time above mentioned for the payment of said debt, applying the proceeds upon the mortgage, after deducting all expenses of sale and keeping said property."

On the 17th day of July, 1876, the parties entered into an agreement in and by the terms of which the plaintiff sold to the defendant his share and interest in the wheat then standing upon the defendant's farm for the sum of ten dollars, and that amount was indorsed upon the mortgage. On the 18th day of July, 1876, the defendant caused the sorrel mare mentioned in the mortgage to be taken from the possession of the plaintiff under and by virtue of the mortgage, without his authority or consent, and caused the same to be advertised and sold at public auction. It was for this taking that the plaintiff alleges conversion.

The referee has held and decided that under the clause contained ·in the mortgage, "that in case the said Arlon M. Vose shall deem himself unsafe it shall be lawful for him to take possession," etc.,

the defendant must prove and establish to the satisfaction of the jury or referee that he deems himself unsafe before. he is justified in taking possession of the property, and whether he is actually insecure and unsafe does not rest in the mere whim, caprice or arbitrary will of the mortgagee, but becomes a question of fact to be heard and determined like other important questions of fact and governed by the same rules. That in this case the evidence did not justify the defendant in deeming himself unsafe, and that consequently he had no right to take possession of the mare at the time he did. This question presents the important question in the case for review.

The appellant relies upon *Huggans* v. *Fryer* (1 Lans., 276), *Roy* v. *Goings* (96 Ill., 361), *Farrell* v. *Hildreth* (38 Barb., 178), and *Hall* v. *Sampson* (35 N. Y., 274).

In the case of *Huggans* v. *Fryer* the mortgage was upon a yoke of oxen and contained the clause, that " if the mortgagee deems himself unsafe it shall be lawful for him to take possession of the property and sell the same at public or private sale previous to the time mentioned for the payment of the debt." In that case the mortgagee deeming himself unsafe took possession of the property before the mortgage came due and sold the same without giving personal notice to the defendant. The question considered upon the appeal was whether or not the sale was illegal and void for want of personal notice to the defendant. It was held that the sale was valid. It does not appear from the case, as reported, that any evidence was given upon the question as to whether or not the plaintiff was unsafe when he took possession of the property, and that question does not appear to have been argued. The court, in commenting upon the case, says: " The taking possession of the property and the advertisement of its sale was in strict conformity with the condition that when the mortgagee deemed it unsafe he could sell and apply the proceeds to the payment of the debt."

In the case of *Farrell* v. *Hildreth* the action was for conversion of a wagon and heifer, which property the plaintiff claimed by virtue of a chattel mortgage executed to him by one John Farrell, containing the danger clause. The defendant, as sheriff, levied upon the property by virtue of an execution issued upon a judgment against John Farrell. The plaintiff demanded the property

of the sheriff, which was refused, and the property was sold on the execution. The question raised upon the appeal in that case was whether or not, at the time of the levy or the demand by the plaintiff of the property, the mortgagor had an interest in the property liable to be levied upon and sold on execution. The court held that where the mortgagor has retained no other interest in the property than an equity of redemption, such interest is not the subject of levy and sale, and that there was abundant ground for a feeling of insecurity on the part of the mortgagee. The sale was forbidden and the property demanded, and the jury would have been warranted in finding that the mortgagee felt himself insecure and unsafe. The question as to whether or not it was necessary for the jury to so find does not appear to have been raised or discussed.

In the case of *Hall* v. *Sampson* the action was for the conversion of a piano forte, which was claimed by the plaintiff under a chattel mortgage containing the danger clause. The defendant, as sheriff, levied upon the same under an attachment and the same was subsequently sold upon execution in the attachment suit. The mortgage covered a large amount of household furniture, embracing other articles besides the piano. At the time the piano was attached the mortgage was not due. Subsequently the plaintiff deemed himself insecure and took possession of the mortgaged property except the piano. At this time he knew the piano had been attached, and his reason for not taking it into his possession with the other property was that it was at a distance of ten miles from his residence and he had no convenient place to put it. The court held that the execution of the mortgage vested the plaintiff with title subject to be defeated by the subsequent performance of the condition; that the mortgage specifically defined the circumstances under which the grantee should become entitled to the right of possession, and that this evinces the mutual intent of the parties that until vested in the mortgagee it should remain in the mortgagor. His possessory right was to terminate on the failure to pay the debt at the time named, or at such earlier time as might be fixed by the election of the mortgagee if in good faith he should deem himself insecure; that the mortgagor's interest terminated when the plaintiff, finding his debt insecure, exercised his right under the

mortgage to treat the condition as broken; that his act in taking possession of the bulk of the property was an assertion of his claiming enforcement of the forfeiture. From that time he had the right of possesion as well as the legal title, and the authority of the sheriff ended with the interest of the debtor.

In *Roy* v. *Goings* the case was decided in the Supreme Court of Illinois. The rule as stated by the court, is, that under a clause in a chattel mortgage that if the mortgagee shall, at any time before the debt becomes due, feel himself unsafe or insecure he shall have the right to take possession of the mortgaged property, the mortgagee has the right to determine the crisis for himself subject only to the limitation that his judgment of insecurity must be exercised in good faith upon reasonable grounds or probable cause. That this rule does not require that there should be actual danger, or that the proof should furnish the court, at the time of the trial, with reasonable grounds to decide that there was actual danger. But it will be sufficient if at the trial it appears that at the time of the taking of possession there was apparent danger, such that a reasonable man might in good faith act upon. That the feeling of insecurity has reference to such feeling as is produced by some subsequent cause, or some cause not in being when the mortgage was executed.

In the case of *Smith* v. *Post* (reported in 1 Hun, 516), the action was to recover property which had been levied upon by virtue of an execution, and which property had been sold by virtue of a chattel mortgage in favor of the defendant. In this case the General Term of the Third Department held that the provision in the mortgage that in case of default in payment, or in case the mortgagee should at any time deem himself unsafe, he might take possession of the property and sell the same, was for the benefit of the mortgagee and authorizes him to take possession when there was default, or when, in his judgment, he deemed it best for the safety of his demand. And no proof was required to show that he considered himself unsafe, as the legal presumption would be that such was the fact when possession was taken before it was due.

Thomas on Mortgages, at page 443, states the rule to be that " where there is a clause in the mortgage which authorizes the mortgagee to take possession at any time when he may deem himself insecure, the mortgagee may take the property away from the mort-

gagor at any time when he may think it best for his own interests, and if the power contained in the mortgage justifies such a course, he may sell the property and thus bar the equity of redemption even before the debt becomes due."

Jones, in his new edition, just published, on chattel mortgages, at section 431, says: "A provision that the mortgagee may take possession whenever he shall deem himself unsafe is for his benefit, and authorizes him to take possession, when, in his judgment, he deems it best for his safety to do so, and upon his taking possession before default no proof is required to show that he considered himself unsafe, as the legal presumption is that such was the fact. He is made the sole judge of the happening of the contingency upon which he may take possession. It is immaterial whether his apprehensions of loss be well or ill founded. Being entitled to possession of the property for such cause he may maintain an action for the possession of it against any one who detains it, or trover for the conversion of it. He may, moreover, take possession without making any previous demand for payment. Such a clause vests in the mortgagee an absolute discretion to take possession of the property when ever he may deem himself insecure, and the exercise of this right does not depend upon the fact that he has reasonable ground for deeming himself insecure. Nor is such a contract a hard and unconscionable one, especially as the right of possession passes with the legal title by force of the mortgage, in the absence of any agreement to the contrary. When the parties have made their own contract the courts will not set that aside and make a new one for them. Such a provision in a mortgage is a contract right, and therefore it cannot be impaired by subsequent legislation. If the mortgagor wishes to retain possession of the property until the mortgagee shall have reasonable grounds to deem himself insecure, he can insert, or have inserted, a stipulation to that effect in the mortgage; or if he wishes to go still further, and retain possession of the property until the mortgagee shall become in fact insecure, he can have a stipulation put into the mortgage to that effect. But if he chooses only to have inserted in the mortgage a clause that he shall have the right to possession of the property until the mortgagee shall deem himself insecure, then he can only retain the property until the mortgagee does in fact

deem himself insecure; and he has no right to question the grounds upon which the mortgagee entertains such feeling of insecurity. He cannot say to the mortgagee, 'You are unreasonable; you have no right to feel insecure; there are in fact no grounds for such feelings of insecurity.' The only question at all material in such a case is, whether the mortgagee does in fact so feel; and if the mortgagee claims that he has such a feeling, and afterward on the trial testifies that at the time he took possession of the property he had such a feeling, and if, upon the facts of the case, it is possible at all to believe that any person, however timid and fearful he might be, might have had such a feeling, then it should be held that the mortgagee had a right to take possession of the property. Under a clause authorizing the mortgagee to take possession whenever he should deem himself insecure, he is entitled to exercise this right if he has good reason to think, and did think, that he had been overreached in regard to the value of the property."

We have thus briefly referred to the principal decisions in our own State and of Illinois, and have given the rule as stated by our recent elementary writers upon the question. There are numerous decisions in other States which we have examined. Whilst there is some conflict in the decisions, we are of the opinion that the weight of authority is in accordance with the rule stated by Jones.

In the case under consideration the defendant testified that at the time he took possession of the mare he did in fact deem himself unsafe. We are of the opinion that there existed reasonable grounds for such feeling. The mortgage was upon the wheat and rye growing upon the defendant's farm. These crops were relied upon in chief to pay the defendant's claim. The crops had substantially failed. The plaintiff, when he examined the crops on the Sunday prior to the sale, reported that he did not believe the crops would pay the expenses of harvesting. He sold his interest in the crops to the defendant for ten dollars. The defendant, when he harvested the crops, realized therefrom but the sum of thirty-nine dollars, whilst it cost him forty-seven dollars to harvest them. The crops having substantially failed, the mare only was left to secure the defendant for the amount still unpaid upon the mortgage. The mare, as the defendant claims, was worth but the sum of fifty dollars. Other witnesses corroborate him upon the value

of the mare. We think, therefore, that the evidence establishes the fact that he, in good faith, believed himself insecure. If so, within all of the authorities, he would have the right to take possession of the maré under the mortgage.

Judgment should be reversed and new trial ordered before another referee, costs to abide the event.

SMITH, P. J., BARKER and BRADLEY, JJ., concurred on the last ground stated in the opinion.

So ordered.