SADIE H. WHITING *vs.* HENRY WHITING.

Hancock.    Opinion July 10, 1913.

*Bill of Sale.    Bonds.    Conversion.    Demand.    Gratuitous Bailee.    Intention.*
*Ownership.    Possession.    Refusal.    Title.    Trover.*

1.  An action of trover cannot be maintained without proof that the defend-
    ant either did some positive wrongful act, with the intention to appropriate
    the property to himself, or to deprive the rightful owner of it.
2.  The refusal to deliver the property, upon demand, must be absolute,
    amounting to a denial of the plaintiff's title to the possession and not a
    mere apology for not delivering the goods at present.
3.  If the intention be based on a denial of the owner's rights or be accom-
    panied by an intent to convert the property to the holder's own use, an
    action for conversion will lie.

On report.    Judgment for the defendant.

This is an action of trover to recover the value of eight bonds of
one thousand dollars each alleged to be the property of the plaintiff.
Plea, the general issue.    At the conclusion of the evidence, the case
was reported to the Law Court for determination upon so much of
the evidence as is legally admissible.

The case is stated in the opinion.

*Daniel E. Hurley,* for plaintiff.

*Peters & Knowlton,* for defendant.

SITTING:    SPEAR, CORNISH, BIRD, HALEY, HANSON, JJ.

HANSON, J.    Action of trover for eight bonds of the value of
$1,000 each.    The writ is dated January 12, 1911.

Henry Whiting, the defendant, died January 24, 1911, and his
administrator, Samuel K. Whiting, comes in and defends.    The
case is reported for judgment upon so much of the evidence as is
legally admissible.    The material facts are these:  In 1901, George
W. Whiting and Henry Whiting, brothers, rented a box in the
safe deposit vault of the Union Trust Company at Ellsworth.    The

bonds which are the subject of this suit were the property of George W. Whiting, and were deposited in that box. Both had access to the box, but Henry Whiting, by some arrangement with his brother, removed the coupons from the bonds, and the amounts accruing therefrom were collected and credited to the account of George W. Whiting at the Trust Company. It appears that Henry Whiting rightfully came into possession of said bonds, and that such arrangement continued until the death of Henry Whiting, January 24, 1911. It further appears that Henry Whiting made no charge, and received no compensation for any service he may have rendered in connection with the bonds. George W. Whiting was twice married. He has one daughter living who was born of the first marriage. He married the plaintiff in September, 1910, and is now living at Ellsworth. The plaintiff claims ownership of the bonds in question under a bill of sale from George W. Whiting dated December 10, 1911, and has a conveyance of all the property of George W. Whiting.

The foregoing is substantially agreed to as the important details of the case to December 10, 1911, in relation to the ownership, location, and custody of the bonds.

On December 9th, 1911, Mr. D. E. Hurley, acting for the plaintiff, made demand by letter upon Henry Whiting, asking for delivery of the bonds to the plaintiff, or to himself as her attorney. No reply thereto was received by Mr. Hurley or the plaintiff. The plaintiff claims that about January 1st, 1911, she made formal demand upon Henry Whiting at his home in Ellsworth, in the presence of her sister Mrs. Carr, who testified in answer to the plaintiff's attorney as follows:

"Q—Will you tell the jury what the conversation was that you heard between Mrs. Whiting and Henry Whiting? A—Mrs. Whiting asked Mr. Henry Whiting to deliver her up her bonds, and he told her that he could not because Mr. Peters and Mr. Saunders had made a request for him not to do so. Q—Who is Mr. Saunders? A—Mr Hutson Saunders, the father of the wife—former wife—of George Whiting. Q—Did Henry Whiting at that time refuse to deliver the bonds to your sister? A—He did. Q—Did he tell her when he would deliver them? A—He did not."

Henry Whiting did not deliver the bonds to the plaintiff, and this suit followed. The defendant denies that Henry Whiting at any time, or in any manner, was guilty of conversion of these bonds. To prevail, it is incumbent upon the plaintiff to prove both property in herself, and conversion by the defendant; but inasmuch as neither Henry Whiting in his lifetime, nor his administrator, claimed any ownership or property in the bonds, or any interest adverse to the true owner, we will consider first the question of conversion. Has the plaintiff proved a sufficient conversion?

The plaintiff's attorney, relying upon the second demand, says that the ground of the refusal to deliver the bonds to the plaintiff is not a defense to this suit, and that the stand taken by Henry Whiting and the reasons given therefor, constitute conversion.

We are unable to view it in that light. Henry Whiting was ill at his house, and according to the testimony, in his last illness. The bonds were at the Trust Company's vault. The demand was made at his house. The answer was not in such language as courts hold to constitute conversion. On the contrary, the testimony indicates that the request came from Mr. Saunders, the father-in-law of George W. Whiting, who would naturally be interested for his grandchild, the daughter of George W. Whiting, and with no evidence before him of the legal rights of all the parties, his delaying was but natural. However that may be, it is well settled that a mere detention of another's chattels which rightfully came into one's possession is not an actionable conversion. If, however, the detention be based on a negation of the owner's rights, or be accompanied by an intent to convert the property to the holder's own use, a right of action for conversion will arise. 38 Cyc., 2028 and 2029, and cases cited.

The first demand was made on December 9th, the day before the bill of sale was executed, and was therefore premature; and being followed by a second demand in person, the first demand was waived even if not premature. But in order to lay the foundation for an action by the second demand, there must also be, not only a neglect, but a refusal. "This refusal must be absolute, amounting to a denial of the plaintiff's title to the possession, and not a mere apology for not delivering the goods at present." 2 Greenleaf on

Ev., sec. 644. An action of trover "cannot be maintained without proof that the defendant either did some positive wrongful act, with the intention to appropriate the property to himself, or to deprive the rightful owner of it, or destroyed it." *Spooner* v. *Holmes,* 102 Mass., 506; *Hagar* v. *Randall,* 62 Maine, 439.

Henry Whiting was a gratuitous bailee of the bonds in suit. The relation had been maintained for many years. He was bound to use ordinary care in his custody of the bonds. He was responsible to his brother alone, and no limit had been placed upon the duration of the bailment, or place of delivery named. The testimony fails to show any act on his part tending to prove an intention to deprive the plaintiff, or any other person, of property in the bonds, or to appropriate them to his own use. The case shows plainly that he always regarded the bonds as the property of George W. Whiting, and not as his own. The language testified to by Mrs. Carr, and it is the only evidence in the case upon the question of conversion, clearly negatives any claim of ownership, or intention to set up any claim for himself, and explains such delay as he was making, if any delay may be inferred from the facts in the case, by the words "that he could not (deliver the bonds) because Mr. Peters and Mr. Saunders had requested him not to do so." Within twelve days thereafter this action was brought, and in another twelve days Henry Whiting died. The demand claimed was not supported by any evidence of change of ownership in the bonds. His duty was to his brother, the owner of the bonds, and no order or word came from him requiring obedience. He was entitled to such notice from his brother, or the production of satisfactory evidence from third parties of a change of ownership, and he was entitled to a reasonable time and the opportunity to determine what course to pursue, and especially to ascertain what steps to take to protect his brother and himself. *Stahl* v. *B. and M. R. R. Co.,* 71 N. H., 57; *Robinson* v. *Burleigh,* 5 N. H., 225; *Fifield* v. *Me. Cent. R. R. Co.,* 62 Maine, 77.

The event shows that the time allowed was not reasonable, and the testimony utterly fails to show a conversion. It is therefore unnecessary to consider the question of ownership.

The entry will be,

*Judgment for the defendant.*