CHESTER MUELLER, PLAINTIFF-RESPONDENT, v. TECH-
NICAL DEVICES CORPORATION, A CORPORATION OF
NEW JERSEY, AND LESLIE E. ROBERTS, DEFENDANTS-
APPELLANTS.

CHESTER MUELLER, PLAINTIFF-RESPONDENT, v. SEA-
BOARD COMMERCIAL CORPORATION, A CORPORATION
OF DELAWARE, DEFENDANT-APPELLANT.

Argued October 29, 1951—Decided November 26, 1951.

202 

*Mr. Edward R. McGlynn,* argued the cause for the appellants Technical Devices Corporation and Leslie E. Roberts (*Messrs. McGlynn, Weintraub & Stein,* attorneys).

*Mr. Charles H. Tuttle,* of the New York bar, argued the cause for the appellant, Seaboard Commercial Corporation (*Mr. Thornton C. Land,* attorney; *Mr. Lloyd V. Admirall* and *Mr. John S. Brittain,* of the New York bar, on the brief).

*Mr. Robert Shaw* argued the causes for the respondent (*Mr. Robert W. Brady,* attorney).

The opinion of the court was delivered by

OLIPHANT, J. This appeal is from a judgment of the Essex County Court in the sum of $16,500 entered in favor of the plaintiff as the result of a jury verdict. The appeal, taken to the Appellate Division of the Superior Court, has been certified here on our own motion.

The two suits involved in this appeal were consolidated for trial, that against Technical Devices Corporation, hereinafter referred to as "Technical," and Roberts was commenced by summons and complaint, that against Seaboard Commercial Corporation, hereinafter referred to as "Seaboard," by writ of attachment. The sufficiency of the moving papers in the suit against Seaboard was reviewed by this court and the action of the trial court in denying defendant's motion to quash the writ of attachment was affirmed, 5 *N. J.* 28 (1950). In the opinion in that case we held that the affidavits of the plaintiff Mueller *prima facie* disclosed a cause of action in conversion and that the court properly issued the writ. That cause was remanded and proceeded to trial together with that against Technical and Roberts.

The cases are grounded in trover and conversion. The theory of plaintiff's case is that the defendant Technical was the actual converter of his property and that the defendants Roberts, the president of Technical, and Seaboard were also liable to respond in damages for having participated in the conversion, the latter by reason of its control and domination of the corporate policies of Technical through 100 per cent stock ownership.

Plaintiff asserted that he was the owner of certain goods and chattels referred to as "Radio Guide Assets" and that, at the request of Roberts, an option to purchase this property was given to Technical as well as the right to take, use and keep them in its possession during the option period provided certain rental charges were assumed and paid; that on April 8, 1949, Roberts notified plaintiff that his company, Technical, did not intend to exercise the option and that it had not and did not intend to pay any rentals for their use.

The complaint then alleged that:

"Though the plaintiff has demanded of both the defendants (Technical and Roberts) that they deliver said goods and chattels, known as Radio Guide Assets, to plaintiff, the defendants, well knowing that said goods and chattels are the property of the plaintiff have unlawfully refused to deliver them to the plaintiff."

The goods and chattels involved in these actions consisted of the physical assets of the Radio Navigational Instrument Corporation which were acquired by Mueller from the trustee in bankruptcy of that corporation in April, 1949, for $15,000. Mueller, as secretary of Technical, had been instructed by resolution to put in a bid for the assets of the Radio Navigational Instrument Corporation, but in view of the fact that Technical could not afford the cash expenditure at that time, Mueller purchased these assets in his own name and permitted Technical to make use of them. Mueller testified that he was assured orally that he would be reimbursed by Technical for the money he had expended for the aforementioned assets when the company was in a financial position to do so. The property purchased by Mueller consisted of machinery, office furniture, plant furniture and accessories, instruments and finished and semi-finished units and parts for producing units known as radio navigational guides. Part of the property was delivered to Technical's plant at Roseland, Essex County, where the manufacturing plant of Technical was located. This consisted of furniture and office equipment, plus some technological equipment; the balance was stored at the Federal Storage Warehouses in Newark. Through an error the warehouse receipt was issued in the name of Technical rather than Mueller. On September 28, 1948, a resolution was passed by the board of directors of Technical authorizing the Federal Warehouse to correct the receipt issued by it so that it would read "Chester Mueller, c/o Technical Devices Corporation." The defendant Technical admitted possession of that part of Mueller's property in its plant but denied possession of that portion in storage. The warehouse receipt was continued in Technical's name because its resolution authorizing a change in the receipt was not certified in such a fashion as to be acceptable to the warehouse.

At the end of plaintiff's case motions for judgments of involuntary dismissal against all the defendants were made, denied and exceptions duly taken to the court's rulings, and at the end of the whole cases motions were made for directed

verdicts in favor of the defendants which were likewise denied and exceptions taken thereto. The main point argued by the appellants is that either the motions for involuntary dismissal or the motions for directed verdicts should have been granted and that it was error for the court not to have done so.

There is no question but what the possession by Technical of Mueller's property was lawful. It was, therefore, under the circumstances herein exhibited, incumbent upon the plaintiff to prove an unlawful detention. The gist of an action in trover is conversion, that is, the exercise of any act of dominion in denial of another's title to the chattels, or inconsistent with such title. The rule is well expressed in *Farrow v. Ocean County Trust Co.*, 121 *N. J. L.* 344 (*Sup. Ct.* 1938) in the following language:

"There must be an actual conversion, or a refusal to deliver on demand, which is evidence of conversion, before the detention becomes unlawful. To constitute a conversion of goods there must be some repudiation by the defendant of the owner's right, or some exercise of dominion over them by him inconsistent with such right, or some act done which has the effect of destroying or changing the quality of the chattel."

See also *Woodside v. Adams,* 40 *N. J. L.* 417 (*Sup. Ct.* 1878); *Crown Co. v. Reilly,* 88 *N. J. L.* 590 (*Sup. Ct.* 1916); 53 *Am. Jur., Trover and Conversion,* § 24, *p.* 819 *et seq.* "Less than this would constitute a trespass, but not a conversion, so long as the character of the chattels remained unchanged." *Frome v. Dennis,* 45 *N. J. L.* 515 (*Sup. Ct.* 1883).

It is well settled that where possession of chattels is lawfully acquired, a demand therefor and refusal to deliver is generally necessary before an action in trover and conversion will accrue. A demand and refusal do not of themselves amount to a conversion, but are evidence from which a jury may find that a conversion had been committed. The demand, however, must be made at a time and place and under such circumstances as defendant is able to comply with if he is so disposed, and the refusal must be wrongful. If the refusal to deliver be qualified, or there be a condition annexed to it,

then the question presented is whether it be a reasonable one. The burden of·proof of a demand and a refusal rests upon the plaintiff. *Bigelow Co. v. Heintze,* 53 *N. J. L.* 69 (*Sup. Ct.* 1890) ; *Temple Co. v. Penn Mutual Life Ins. Co.,* 69 *N. J. L.* 36 (*Sup. Ct.* 1903) ; *Veader v. Veader,* 87 *N. J. L.* 140 (*Sup. Ct.* 1915) ; *Ward v. Huff,* 94 *N. J. L.* 81 (*Sup. Ct.* 1920) and *Crown ·Co. v. Reilly, supra.* See also Note in 61 *A. L. R.* 621.

 Plaintiff argues that no demand was necessary under the circumstances exhibited here because of an actual conversion, and alternatively, that the sufficiency of the demand was a question of fact for the jury to determine. We find no merit in either of these contentions. There was a necessity for a demand before this action of trover and conversion accrued; the chattels were lawfully obtained and in the possession of Technical, and it further appears from the evidence that there was no removal of them, no destruction of them, nor that a demand for them would have been useless. *Temple Co. v. Penn Mutual Life Ins. Co., supra, p.* 37; 53 *Am. Jur., Trover and Conversion,* § 88, *pp.* 880 *et seq.* In the previous appeal of this case the affidavits of Mueller were held to show a *prima facie* cause of action. His proofs at the trial now under review deviated from, did not support the statements made in the affidavits which were before us on the previous appeal, and added other material.

 Viewed in the light of the foregoing principles, plaintiff's· proofs fall short of and do not establish a *prima facie* case of conversion as would warrant a finding that the defendants committed any act of dominion over the property inconsistent with plaintiff's ownership thereof, or such a refusal after proper demand as would constitute a repudiation of that right of possession. ·

Plaintiff testified that on December 28, 1948, when Technical was involved in reorganization ·proceedings in the federal District Court, he entered into a verbal agreement with Roberts, its president, whereby an option was granted to Technical to purchase the assets of the Radio Navigational

Instrument Corporation at the same price Mueller had paid for them. During the reorganization proceedings and bankruptcy proceeding which had preceded it, no question was raised concerning Mueller's title to these chattels, the trustees did not assert any claim to them, nor did Mueller make any attempt to reclaim his property. Roberts, at the trial below, categorically denied that any such option agreement had been entered into. Thereafter the chattels were on Technical's premises and the receipt for those chattels in storage was retained by Technical. Plaintiff testified that he attempted to find out whether or not Roberts intended to exercise the option and suggested that payment be made by the exchange of certain manufactured articles, but that he was evaded and put off by Roberts.

On April 8, 1949, plaintiff says he telephoned Roberts with respect to the status of his property and was told that Technical did not intend to buy them and that no storage charges had been paid. A letter, dated April 11, 1949, was introduced by the plaintiff allegedly confirming the substance of that telephone conversation, in which letter appears the statement: "since Technical Devices Corporation has no further use for them I may remove them from the premises at any time upon reasonable notice to you." Mueller testified further that on April 11 he sold a "Q Meter" to one Weinberg and that a letter was written to Technical authorizing it to deliver this instrument to the purchaser, but that on the next day, April 12, when Weinberg went to the plant to pick up this article, delivery to him was refused. Weinberg testified that Roberts told him at the time that it was necessary for him to obtain the permission of one Raeder, general manager of Seaboard and a director of Technical, to release this meter and that he wanted all of plaintiff's property to go out at one time rather than piecemeal. On April 12, plaintiff spoke with Roberts and was informed that the approval of Raeder had to be secured before anything was released and that he would confer with Raeder the next morning.

Finally, on April 13, at about 12:30 P. M., plaintiff, accompanied by a law clerk, went to Technical's plant and asked to see Roberts. He was told that Roberts was not there and was referred to one Eli Saltz, the person in charge. Saltz told Mueller that he had no authority to let any property out of the plant and that this applied particularly to plaintiff's property. Mueller had made arrangements with a moving van to appear at one o'clock. After Mueller had conferred with Saltz he went to lunch and upon returning found that Roberts had not yet appeared. Plaintiff then made a demand upon Saltz for his property and was refused. A written notice of demand was thereupon handed to Saltz and the contents read to him. This notice said in part: "Demand is hereby made upon you for immediate possession of all of my property now in your custody and possession." Mueller turned to leave when the telephone rang, as a result of which Saltz called to Mueller and told him that Roberts was on the phone and wanted to talk with him. Plaintiff asked: "Did Mr. Roberts say I could have my property?" Saltz replied: "No, he did not," and plaintiff responded that there was no point in talking to Roberts.

It should be noted that when Mueller left the plant, after having made the demand for possession of the goods, and was called back and told by Saltz that Roberts was on the phone, there was no evidence that Saltz was directed by Roberts at that time to refuse the demand. Saltz testified that he merely told Roberts that Mueller was there and ran out to catch him before the plaintiff left.

Accepting all of plaintiff's testimony as true, it thus appears that the only demand for immediate possession of his property was made on April 13, 1949. The refusal, on April 8, 1949, to exercise the option to purchase was not a refusal to deliver possession. When Mueller made his call at the plant of Technical on April 13 he had apparently had his suit papers already prepared, for the action against Roberts and Technical was instituted the following day. It is to be observed that plaintiff himself proceeded on the theory that defendant's

possession was lawful and that a demand by him was necessary before such possession would become tortious. Until April 8, at least, there is no proof that defendant's possession was by act of dominion in repudiation of any right of the plaintiff to the assets of Radio Navigational Instrument Corporation, nor is it claimed that this personalty had been destroyed or that their character had been changed. From all that appears they were in as good a condition as when the plaintiff purchased them.

The demand made by Mueller for possession of the property was made upon a person who had no authority to deliver the chattels. Saltz was merely a workman in charge of factory operations; he had no authority to let any property go out of the plant without the approval of the directors. A failure to surrender goods constitutes a conversion only if the demand is made upon a person obligated to surrender the goods, or if made upon an agent or employee such power must be within the scope of his agency or employment. With respect to a demand on a corporation, it must be made upon an officer or the governing body authorized to act thereon. 65 *C. J., Trover and Conversion,* § 71, *p.* 49; 53 *Am. Jur.,* § 91, *p.* 884; *Chitty's Blackstone, vol. II, p.* 124.

While not necessary to a determination of the instant case, as we have reached our conclusions on the basis of the plaintiff's proofs, we point out, in discussing the law of trover and conversion, that demand for possession of one's property must be a reasonable one. *Bigelow v. Heintze, supra, p.* 74; *Whiting v. Whiting,* 111 *Me.* 13, 87 *A.* 381 (*Me. Sup. Jud. Ct.* 1913). Plaintiff's letter of April 11 itself stated that demand would be made upon reasonable notice, and a qualified refusal to surrender is not *per se* a conversion if the condition annexed to the refusal to deliver be a reasonable one. *Bigelow v. Heintze, supra; cf. Wykoff v. Stevenson,* 46 *N. J. L.* 326 (*Sup. Ct.* 1884); *Restatement of the Law, Torts,* § 238, *p.* 609.

We conclude that no act was committed by the defendants Technical and Roberts which amounts to a con-

version of plaintiff's property. The plaintiff failed to sustain a case founded in trover and conversion and the defendants' motions for directed verdicts in their favor should have been granted. It follows as a matter of course that if Technical and Roberts were entitled to directed verdicts, Seaboard was likewise entitled to a directed verdict in its favor.

It is immaterial that certain of Mueller's property was used by Technical beyond the date of the alleged conversion. The use made of property after an abortive demand therefor and refusal to surrender does not and cannot make that demand a lawful one.

Having reached the aforesaid conclusions we need not consider the other points raised.

Our determination being dispositive of the causes the judgments below are reversed and judgments final in favor of the defendants will be entered in this court. *Rule* 1:4-9(*b*).

*For reversal*—Chief Justice VANDERBILT and Justices CASE, OLIPHANT, WACHENFELD, BURLING and ACKERSON—6.

*For affirmance*—None.