SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Moshe Meisels v. Fox Rothschild LLP (A-20/21-18) (081534)**

**Argued September 10, 2019 -- Decided January 9, 2020**

**LaVECCHIA, J., writing for the Court.**

This appeal involves claims of conversion and breach of fiduciary responsibility leveled at an attorney, Anthony Argiropoulos, Esq., and his then-law firm, Fox Rothschild LLP (collectively, "the firm"), regarding funds wire-transferred to the firm's trust account.

As alleged in this matter, an intermediary entity wired funds for plaintiff Moshe Meisels, a London-based real estate investor, to the firm's trust account in connection with a real estate deal in which Eliyahu Weinstein, the firm's client, was engaged. Prior to the commencement of this litigation, the firm was admittedly unaware of Meisels's existence. It is undisputed that Meisels did not speak to, or otherwise communicate with, Argiropoulos or Fox Rothschild.

In his pleadings, Meisels alleges that he had Rightmatch Ltd., an entity located in London, transfer over $2.4 million to the attorney trust account of Fox Rothschild, Weinstein's attorneys at the time. Rightmatch wired the money in two transfers, executed by Cambridge Mercantile Group. Confirmations for each transfer were sent, "[f]or and on behalf of Cambridge Mercantile Corp.," to Rightmatch, with a single line indicating "Attn: Moshe Meisels." The transfers themselves did not identify plaintiff as the funds' owner or include any instructions regarding limitations or conditions.

Defendants distributed the funds as their client directed. Meisels alleges that Weinstein instructed the firm to distribute the funds for purposes other than the agreed-upon real estate transaction. According to Meisels, the purchase of the Irvington property was never consummated; Weinstein defrauded Meisels and his related co-plaintiffs.

Plaintiff commenced this action in 2012 and, after discovery and the filing of an amended complaint, defendants sought summary judgment on the grounds that (1) plaintiff did not produce evidence to support ownership of the funds that Rightmatch wired to Fox Rothschild and therefore lacked standing to sue; and (2) plaintiff had no contact with anyone from Fox Rothschild and, therefore, could not establish the essential elements of any of the claims.

1

The motion court granted summary judgment to the firm and dismissed the amended complaint with prejudice. The Appellate Division affirmed as to the fiduciary duty claim but reversed as to the conversion claim, rejecting defendants' argument "that Meisels was required to show that he demanded the return of his property."

The Court granted defendants' petition for certification, seeking review of the Appellate Division's judgment reinstating the conversion claim. 236 N.J. 67 (2018). The Court also granted plaintiff's cross-petition, seeking review of the Appellate Division's judgment dismissing the breach of fiduciary duty claim. 236 N.J. 44 (2018).

**HELD:** The firm did not breach any fiduciary duty where the firm was not made aware, nor did it have any basis on which it reasonably should have been aware, of plaintiff or of a claim by plaintiff to the funds. As such, there was no relationship between the firm and plaintiff on which a fiduciary duty was owed. On that issue, the Court affirms the judgment of the Appellate Division. However, defendants cannot be found to have engaged in conversion in this matter. Where, as here, a law firm lawfully holds in trust wired funds for its client's real estate transaction, which funds are received with no limiting direction or instruction and for which the firm receives no demand from the non-client, the firm's disposition of the trust funds in accordance with the client's instructions does not give rise to a claim for conversion. The Court rejects the reasoning that under these circumstances the obligation to make a demand is excused and reverses as to the conversion claim.

1. As officers of the courts, attorneys owe a duty of care that finds helpful benchmarks in the Rules of Professional Conduct (RPCs). Standing alone, a violation of the RPCs does not create a cause of action for damages in favor of a person allegedly aggrieved by that violation. In this matter, the RPCs provide relevant information for assessing the claimed violation of a fiduciary duty with which the firm is charged. RPC 1.15 addresses an attorney's obligation to safeguard property in his or her possession, including property received from a non-client third party. (pp. 12-14)

2. Here, RPC 1.15 does not provide a pathway for finding a fiduciary duty that was breached by the firm. Meisels maintains that an attorney "owes a fiduciary duty to persons, though not strictly clients, who he knows or should know rely on him in his professional capacity." However, case law extending an attorney's duty to a third party not in privity with the attorney has been approached with care so as to be fair to all; generally stated, it is cabined by considerations of reasonableness. Meisels admits that defendants had no knowledge of his existence, had no contact with him, possessed no knowledge about any purported agreement between him and Weinstein, and made no representations to Meisels. It is simply not reasonable to expect a lawyer to have fiduciary obligations to an individual under such circumstances. Meisels produced no evidence to show that he relied upon defendants in their professional capacity. The circumstances of this case, moreover, offer no indicia that defendants endeavored to

2

induce Meisels to rely on the firm. Inducement of reliance cannot be ascribed to the firm simply because the funds for its client's commercial real estate transaction were permitted to be wired to and held in the firm's trust account. In these circumstances, the firm's disposition of the funds held in its trust account in compliance with the client's instructions, as required by RPC 1.2, was not a breach of fiduciary duty. No fiduciary duty was owed by the firm to Meisels. (pp. 14-18)

3. The Court traces the history of the tort of conversion. To determine whether a conversion has occurred, there must first be an assessment into whether defendant has independent dominion and control over the subject property. Additionally, where the defendant lawfully acquired plaintiff's property, the plaintiff must show that he demanded the return of the property and that the defendant refused compliance. The demand is the linchpin that transforms an initial lawful possession into a setting of tortious conduct, if the demand is refused. Accordingly, in such circumstances, a demand is essential; a claimant must make a demand at a time and place and under such circumstances as defendant is able to comply with if he is so disposed, and the refusal must be wrongful. There are circumstances, to be sure, where demand may be futile, but that is and must be viewed as an exception. (pp. 18-22)

4. Funds held in an attorney's trust account for its client are the client's funds, not the firm's. Here, with no knowledge of a competing claim to the funds -- and, indeed, no knowledge whatsoever about Meisels and his role in the transaction -- the firm acted appropriately in adhering to the client's directions. Meisels cannot prove that the firm itself exercised independent dominion and control over his funds. That requirement for a conversion claim is lacking in this matter. The lack of independent dominion and control, moreover, renders more serious the lack of demand here. The demand would have been the means to alert the firm that a competing claim existed and would have triggered the firm's obligation to reasonably inquire further, and perhaps seek judicial assistance, before embarking on fulfillment of a client's direction. Violation of the demand might then create the tort of conversion. Only when an attorney misdirects or misappropriates funds, or when an attorney has acted contrary to a known, competing claim -- or a competing claim that reasonably should have been known -- can there be an independent dominion or control over the funds by the firm to the repudiation of the rights of the proper owner. (pp. 23-25)

**The judgment of the Appellate Division is AFFIRMED IN PART and REVERSED IN PART, and the Court orders the conversion claim DISMISSED.**

**CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE LaVECCHIA's opinion.**

3

SUPREME COURT OF NEW JERSEY

A-20/21 September Term 2018

081534

Moshe Meisels, Chanie Meisels, Monroe Estates, Ltd.,
and Premier Estates NY, Inc.,

Plaintiffs-Respondents/Cross-Appellants,

v.

Fox Rothschild LLP and
Anthony Argiropoulos, Esquire,

Defendants-Appellants/Cross-Respondents.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| September 10, 2019 | January 9, 2020 |

Francis P. Devine, III, argued the cause for
appellants/cross-respondents (Pepper Hamilton,
attorneys; Francis P. Devine, III, and Angelo A. Stio, III,
of counsel and on the briefs).

Brian K. Condon argued the cause for respondents/cross-
appellants (Condon Catina & Mara, attorneys; Brian K.
Condon and Laura M. Catina, on the briefs).

Diana C. Manning argued the cause for amicus curiae
New Jersey State Bar Association (New Jersey State Bar
Association, attorneys; Evelyn Padin, President, of
counsel, John E. Keefe, Jr., Diana C. Manning, Benjamin
J. DiLorenzo, and Ann Marie Effingham, on the brief).

We granted certification in this appeal to address claims of conversion and breach of fiduciary responsibility leveled at an attorney and his then-law firm regarding funds wire-transferred to the firm's trust account. As alleged in this matter, an intermediary entity wired the funds for plaintiff, a non-client, to the firm's trust account in connection with a real estate deal in which the firm's client was engaged. The wire transfers themselves did not identify plaintiff as the funds' owner, nor did they include any instructions regarding limitations or conditions. Defendants distributed the funds as their client directed. We now address whether, years later, these defendant attorneys should be liable to plaintiff, who was unknown to defendants and had not before asserted an interest in the funds.

The trial court granted summary judgment to defendants Fox Rothschild LLP and its then-partner, Anthony Argiropoulos, Esq. (collectively, "the firm"). On appeal, the Appellate Division affirmed the dismissal of the fiduciary duty claim but remanded the conversion claim for trial.

We conclude that the trial court and Appellate Division appropriately recognized that the firm did not breach any fiduciary duty where the firm was not made aware, nor did it have any basis on which it reasonably should have

been aware, of plaintiff or of a claim by plaintiff to the funds. As such, there was no relationship between the firm and plaintiff on which a fiduciary duty was owed. On that issue, we affirm the judgment of the Appellate Division. However, we reverse on the conversion claim and order that it, too, be dismissed.

Defendants cannot be found to have engaged in conversion in this matter. The firm acted in conformity with its client's instructions about funds lawfully held in the firm's trust account; plaintiff did not have the funds wire-transferred to the firm with any direction or instructions; and plaintiff made no demand for the funds until years after the transaction was concluded, far too late to alert the attorney that there was a contrary claim. Where, as here, a law firm lawfully holds in trust wired funds for its client's real estate transaction, which funds are received with no limiting direction or instruction and for which the firm receives no demand from the non-client, the firm's disposition of the trust funds in accordance with the client's instructions does not give rise to a claim for conversion. We reject the Appellate Division's reasoning that under these circumstances the obligation to make a demand is excused and that liability can exist without it.

3

Plaintiff Moshe Meisels, a London-based real estate investor, entered into a real estate agreement with Eliyahu Weinstein, the firm's client and a non-party to this appeal. According to the agreement, each party "agreed to provide $2.5 million toward the purchase of a property in Irvington, New Jersey."

In his pleadings, Meisels alleges that he had Rightmatch Ltd., an entity located in London, transfer a total of $2,414,163.50 to the attorney trust account of Fox Rothschild, Weinstein's attorneys at the time. Rightmatch made two transfers, executed by Cambridge Mercantile Group, to that account for $1,328,680.99 and $1,083,482.51, respectively. Wire confirmations for each transfer were sent, "[f]or and on behalf of Cambridge Mercantile Corp.,"[1] to Rightmatch, with a single line merely indicating "Attn: Moshe Meisels."

According to Meisels, Rightmatch was a conduit for the transaction and the funds belonged to him.[2] Meisels further alleges that Weinstein instructed

---

[1] The wire confirmations bear a heading entitled "Cambridge Mercantile Group." However the signature line reads, as quoted above, "Cambridge Mercantile Corp."

[2] In an amended verified complaint filed after Meisels's standing to proceed in this matter was disputed, Meisels alleged that the transferred funds originated from Monroe Estates, Ltd. -- an entity in which he claimed ownership. He also claimed that the funds represented a dividend to which he was entitled from Monroe Estates. During the process of discovery, Meisels asserted that the

the firm to distribute the funds for purposes other than the agreed-upon real estate transaction. According to Meisels, the purchase of the Irvington property was never consummated; Weinstein defrauded Meisels and his related co-plaintiffs. Although initially this action involved several plaintiffs and various claims, this appeal involves only Meisels's claims against Fox Rothschild and Argiropoulos for conversion and breach of fiduciary duty.[3]

Prior to the commencement of this litigation, the firm was admittedly unaware of Meisels's existence. It is undisputed that Meisels did not speak to, or otherwise communicate with, Argiropoulos or Fox Rothschild. And the record demonstrates that the funds that Meisels alleged he had wire-transferred to Fox Rothschild's trust account did not contain any instruction from Meisels.

When this action was commenced in September 2012, the initial complaint against Fox Rothschild and Argiropoulos alleged claims of conspiracy to commit fraud, negligence, negligently causing economic loss, conversion, breach of fiduciary duty, attorney malpractice, and unjust

___

funds originated from mortgages that he obtained on different real estate properties.

[3] Because this appeal involves only Moshe Meisels's two claims against defendants Fox Rothschild and Argiropoulos, we do not discuss the claims asserted by his wife, Chanie Meisels, or by entities Monroe Estates, Ltd., and Premier Estates NY, Inc.

5

enrichment. Defendants challenged plaintiff's standing to pursue those actions with respect to the funds that had been wired to the firm's trust account and moved to dismiss. As a consequence, plaintiff filed an amended complaint. A period of procedural wrangling ensued. Discovery was eventually completed,[4] following which defendants filed a motion for summary judgment. That latter motion is the basis of this appeal.

Defendants sought summary judgment on the grounds that (1) plaintiff did not produce evidence to support ownership of the funds that Rightmatch wired to Fox Rothschild and therefore lacked standing to sue; and (2) plaintiff had no contact with anyone from Fox Rothschild and, therefore, could not establish the essential elements of any of the claims.

The motion court granted summary judgment to the firm and dismissed the amended complaint with prejudice. In analyzing the conversion claim, the court quoted prior law in stating, "the essential elements of a common law action in conversion are that the property and right to immediate possession thereof belong to the plaintiff and [there is a] wrongful act of interference with

---

[4] Defendants filed a second motion to dismiss, reiterating their standing challenge and arguing that plaintiff failed to state a claim upon which relief could be granted. The trial court found that plaintiff lacked standing and dismissed the complaint on that basis. The Appellate Division reversed that dismissal in 2015 and remanded the matter for further proceedings.

6

that right by the defendant." (quoting First Nat'l Bank of Bloomingdale v. N. Jersey Tr. Co., 18 N.J. Misc. 449, 452 (1940)). The motion court found no "competent evidence . . . that the funds that wound up in Fox Rothschild's account" belonged to Meisels, nor did it find any indication that the firm acted wrongfully. In summarizing its determination to dismiss the conversion claim, the court concluded the record was bereft of "any instructions from Mr. Meisels to Fox Rothschild" that would support a claim of a wrongful act by the firm that interfered with Meisels's rights.

The motion court dismissed Meisels's breach of fiduciary duty claim as well because "[t]here[] [was] no connection between Mr. Meisels and Fox Rothschild." The court found that the firm was not Meisels's counsel, did not make any representations to him, and therefore did not make representations with the intent that he would rely on them. Further, the court determined that Meisels was not "in the field of people or in the order of people" that could assert some general reliance on representations by the firm. In sum, the court found "no competent evidence" to support a breach of fiduciary duty claim.

Meisels appealed again and the Appellate Division issued an unpublished opinion that reversed in part and affirmed in part the motion court's judgment. The appellate court affirmed the motion court's dismissal of

the fiduciary duty claim but reversed the dismissal of the conversion claim, finding that Meisels "presented sufficient evidence to reach a jury."

On the fiduciary duty claim, the Appellate Division agreed that "Meisels, whose identity was undisclosed to defendants, did not establish that defendants entered into a fiduciary relationship with him." The court noted that the law firm "received money from Cambridge Mercantile which referenced Rightmatch, but Meisels's role in or use of Rightmatch and his claimed ownership of the money was not disclosed to Fox Rothschild." Because there was no evidence that the firm knew or should have known that Meisels relied on it in its professional capacity, the Appellate Division held that Meisels's "undisclosed status dooms his claim."

In reinstating Meisels's conversion claim, the Appellate Division first concluded that there were sufficient facts presented by Meisels to demonstrate standing to pursue his claimed right to seek return of the approximately $2.4 million. The court then proceeded to reject defendants' argument "that Meisels was required to show that he demanded the return of his property." According to the court, "[d]emand is not invariably an essential element of conversion." The court reasoned that demand "is not required when the alleged converter has already parted with the chattel or, in this case, identifiable fund of money"; rather, the court explained, "demand is required

8

where the possessor of the chattels lawfully acquired them, and still retains them." Thus, the court stated that where conversion has already occurred -- such as by wrongful transfer -- "demand is both futile and unnecessary."

We granted defendants' petition for certification, seeking review of the Appellate Division's judgment reinstating the conversion claim. 236 N.J. 67 (2018). We also granted plaintiff's cross-petition, seeking review of the Appellate Division's judgment dismissing the breach of fiduciary duty claim. 236 N.J. 44 (2018). Thereafter, we granted amicus curiae status to the New Jersey State Bar Association (NJSBA).

## II.

## A.

In urging this Court to reverse the reinstatement of plaintiff's conversion claim, defendants argue that the Appellate Division established a new, expanded standard for the tort of conversion. They emphasize that conversion, as recognized in this state and under the Restatement (Second) of Torts, involves the intentional exercise of dominion or control over chattel that "so seriously interferes with the right of another to control" the chattel that the full value of the property must be paid. Here, defendants contend, the firm did not maintain dominion or control over the funds. They assert that, because they received no limiting instructions or conditions with respect to the funds at

9

issue, Meisels cannot prove that the firm itself exercised dominion over those funds when it acted in accordance with its client's direction as to those funds. Defendants argue further that, even if they could be found to have exercised dominion over the chattel, there must be a demand for the claimed property before a conversion claim is filed by one who, as here, is admittedly unknown to the defendants. Defendants contend that the Appellate Division erred in concluding that demand is unnecessary. Because money is fungible, the demand obligation is not a futile obligation that should be jettisoned.

Amicus NJSBA supports defendants in their position on the petition and asserts that, absent a competing claim, following client instructions for the disbursement of funds is not an exercise of dominion or control over funds held in an attorney trust account.

Plaintiff's arguments in response to defendants' petition support the reasoning of the Appellate Division. Plaintiff argues that when conversion has taken place, demand is futile and unnecessary. Plaintiff disputes that the Appellate Division altered the state of conversion law in New Jersey when it determined that no demand was required here.

B.

On the cross-petition, plaintiff argues that the Appellate Division erred in affirming the dismissal of the fiduciary duty claim and that factual questions

10

require that the matter be presented to a jury. Meisels posits that the funds were the property of "others" because "it was not Weinstein's property." Specifically, Meisels argues that even though his status was undisclosed to the firm, defendants knew or should have known that the money was not transferred into the trust account by its client, Weinstein, but rather by another -- Rightmatch, in this case as an extension of Meisels. Meisels also claims that the firm should have been on notice that Weinstein was being sued in other forums for engaging in allegedly fraudulent conduct.

Defendants respond to the cross-petition by emphasizing that they could not owe Meisels a fiduciary duty when they never knew of his existence or made any representations to him, such that he could not have relied on any representations from them. They point out that plaintiff admits that the firm lacked knowledge of his existence, lacked contact with him, and possessed no knowledge about any agreement between Meisels and Weinstein. To the extent that plaintiff argues that the firm essentially owed to him the duties of an escrow agent, the firm maintains that it never was an escrow agent and the pleadings in this matter did not advance that allegation. And the firm insists that the obligation under Rule of Professional Conduct (RPC) 1.15(b) to "promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive" does not apply here. That Rule

11

applies if the attorney knows that such person exists and has asserted an entitlement to the funds.

Amicus NJSBA vigorously maintains that the firm's actions here were consistent with the obligations owed by an attorney under the RPCs. It argues that the firm's actions do not implicate RPC 1.15 and that the firm properly followed the obligation under RPC 1.2 to honor client instructions. It argues that the decision under review unduly burdens attorneys who act in accordance with RPC 1.2.

### III.

As officers of the courts, attorneys are reposed with special status. They enjoy the confidence of the courts that flows from being a licensed member of the Bar. Relatedly, clients place significant trust in counsel, secure in the knowledge that an attorney must abide by strictures imposed through the privilege of such professional licensure. And so, clients entrust attorneys with the protection and vindication of their precious concerns or interests, whether founded on money, physical property, rights, or other intangible pursuits.

Attorneys carry substantial responsibility, but it is folly to suggest it is limitless. It is a duty of care that finds helpful benchmarks in the RPCs. Some Rules are specific; some speak aspirationally, and thus more generally. Our modern RPCs, which provide the basis for the imposition of professional

12

discipline, are modeled in substantial part on the American Bar Association (ABA) Model Rules. See Baxt v. Liloia, 155 N.J. 190, 197 (1998).

Importantly, the RPCs guide attorneys and the courts with regard to proper conduct and can be relevant to the standard of care in civil cases against attorneys. Id. at 199-200; see, e.g., Petrillo v. Bachenberg, 139 N.J. 472, 479 (1995) (finding RPCs to be useful in the determination of "[w]hether an attorney owes a duty to a non-client third party"). Aptly described, the RPCs set forth "the minimum standard of competence governing the profession." Albright v. Burns, 206 N.J. Super. 625, 634 (App. Div. 1986). That said, standing alone, a violation of the RPCs does not create a cause of action for damages in favor of a person allegedly aggrieved by that violation. See Baxt, 155 N.J. at 201; Sommers v. McKinney, 287 N.J. Super. 1, 13 (App. Div. 1996) ("Violation of the rules of professional conduct do[es] not per se give rise to a cause of action in tort."); Albright, 206 N.J. Super. at 634 (same).

In this matter, the RPCs provide relevant information for assessing the claimed violation of a fiduciary duty with which the firm is charged. Defendants and amicus argue that resolution of this matter should be informed by RPC 1.2, which requires an attorney to "abide by a client's decisions concerning the scope and objectives of representation," subject to express limitations. They claim that the Appellate Division's decision results in

13

burdening an attorney's ability to comply with that Rule in following a client's instructions regarding the disbursement of funds. Plaintiff, on the other hand, finds support in RPC 1.15, which addresses an attorney's obligation to safeguard property in his or her possession, including property received from a non-client third party. The Rule provides, in relevant part:

> (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. . . .
>
> (b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive.
>
> [RPC 1.15(a) to (b).]

In this matter, we are unable to agree that RPC 1.15 provides a pathway for finding a fiduciary duty that was breached by the firm.[5] Meisels clearly was not defendants' client so no fiduciary duty was owed on that basis. As to

---

[5] Indeed, subsection (a) has no applicability here because this case does not implicate the requirement of holding property separate from the lawyer's property. The funds were kept in the trust account and afterward disbursed in accordance with client instructions. We cannot agree that subsection (a) has any relevance here.

14

third persons referenced in the RPC, Meisels maintains that an attorney "owes a fiduciary duty to persons, though not strictly clients, who he knows or should know rely on him in his professional capacity." However, case law extending an attorney's duty to a third party not in privity with the attorney has been approached with care so as to be fair to all; generally stated, it is cabined by considerations of reasonableness. See generally Petrillo, 139 N.J. at 484. Meisels admits that defendants had no knowledge of his existence, had no contact with him, possessed no knowledge about any purported agreement between him and Weinstein, and made no representations to Meisels. It is simply not reasonable to expect a lawyer to have fiduciary obligations to an individual under such circumstances.

Meisels points to a comment to proposed RPC 1.15, which provides that a "lawyer should hold property of others with the care required of a professional fiduciary." Report of New Jersey Supreme Court Committee on the Model Rules of Professional Conduct, Special Supplement, N.J.L.J., July 19, 1984. He argues that, in this case, "it is undisputed that the money [that] was transferred into [an] account was the property of 'others,'" because "[i]t was not Weinstein's property." However, even this argument fails. The "property of others" was money sent by Rightmatch, not Meisels. That transfer from Rightmatch does not reasonably demonstrate that defendants

knew or should have known that a person they did not know existed -- Meisels -- would rely on them in their professional capacities, especially when Meisels admits that no representations were made by the firm to induce reliance by a class of third persons that would encompass him.

In fact, Meisels produced no evidence to show that he, a person unkown to the firm, relied upon defendants in their professional capacity. The firm did not become an escrow agent, and Meisels is mistaken to rely on case law addressing the duties of escrow agents when the firm never undertook such a role. Cf. In re Hollendonner, 102 N.J. 21, 22 (1985) (attorney advised to hold funds in escrow pending completion of sale agreement); see also In re Frost, 171 N.J. 308, 324 (2002) (attorney knew of compensation carrier's ownership claim and was an escrow agent with respect to money that he knew was not his when he disbursed it to client and himself). We find unpersuasive Meisels's invocation of the statement in Frost that "it is a matter of elementary law that when two parties to a transaction select the attorney of one of them to act as the depository of funds relevant to that transaction, the attorney receives the deposit as the agent or trustee for both parties." 171 N.J. at 323 (quoting In re Hollendonner, 102 N.J. at 28). That statement should not be taken out of context to now support imposing a duty on lawyers involved in their client's real estate transaction to inquire into the origins and possible third-party

16

interests of every source of funds that flows into a trust account for purposes of closing on a transaction. Imposition of such an impractical burden would frustrate closings and potentially promote malpractice actions due to the delay such investigatory obligations would require. Here, Meisels was unknown to the firm and there was no direction, instruction, or demand made for the funds before the firm disbursed them in accordance with the directions of its client.

The circumstances of this case, moreover, offer no indicia that defendants endeavored to induce Meisels to rely on the firm. This Court explained the concept of reliance with regard to third parties unknown to a lawyer in <u>Banco Popular North America v. Gandi</u>, where we stated that

> [i]f [an] attorney[']s actions are intended to induce a specific non-client[']s reasonable reliance on his or her representations, then there is a relationship between the attorney and the third party. Contrariwise, <u>if the attorney does absolutely nothing to induce reasonable reliance by a third party, there is no relationship</u> to substitute for the privity requirement.
>
> [184 N.J. 161, 180 (2005) (emphasis added).]

As the Appellate Division properly determined in this matter, Meisels "presented no evidence that [defendants] entered into an express or implied agreement with him," and the record offers "no evidence that [Fox Rothschild] or its former partner knew, or had reason to know, that [Meisels] allegedly relied on them in their professional capacity," particularly in light of his

17

undisclosed status. Inducement of reliance cannot be ascribed to the firm simply because the funds for its client's commercial real estate transaction were permitted to be wired to and held in the firm's trust account. With <u>Gandi</u> as the guide, we conclude that defendants did "absolutely nothing to induce reasonable reliance" from Meisels. <u>Ibid.</u> And, because an "invitation to rely and reliance are the linchpins of attorney liability to third parties," <u>id.</u> at 181, we find that no fiduciary relationship existed between the two parties.

In these circumstances, the firm's disposition of the funds held in its trust account in compliance with the client's instructions, as required by RPC 1.2, was not a breach of fiduciary duty. No fiduciary duty was owed by the firm to Meisels.

## IV.

We turn next to the Appellate Division's reasons for concluding that, even though no breach of a fiduciary duty can be found here, the trial court erred in dismissing plaintiff's claim based on the tort of conversion. The appellate court reached that conclusion despite the absence of any demand from plaintiff for the funds, which were wired to the trust account with no instructions or explanation by Meisels or others acting on his behalf. Had there been a demand in these circumstances, it would have alerted the

18

attorneys that there was a contrary claim -- which is an essential reason for the demand requirement.

A.

The tort of conversion is long in the tooth. It is related to the common law action of trover, which entitles one to seek damages for the value of property that is not returned or surrendered to the proper owner.[6] See Frome v. Dennis, 45 N.J.L. 515, 516 (Sup. Ct. 1883); see generally Restatement (Second) of Torts § 222A, cmt. a (Am. Law Inst. 1965). Trover requires "an actual conversion, or a refusal to deliver on demand, which is evidence of conversion." Woodside v. Adams, 40 N.J.L. 417, 430-31 (Sup. Ct. 1878). Since its incorporation from the English common law in this state, the description in Woodside of the essence of conversion has stood the test of time:

> To constitute a conversion of goods, there must be some repudiation by the defendant of the owner's right, or some exercise of dominion over them by him inconsistent with such right, or some act done which has the effect of destroying or changing the quality of the chattel.
>
> [Frome, 45 N.J.L. at 516 (quoting Woodside, 40 N.J.L. at 431) (citing English common law cases).]

---

[6] "Trover" is "[a] common-law action to recover damages for the conversion of personal property, the damages generally being measured by the property's value." Black's Law Dictionary 1816 (11th ed. 2019).

See, e.g., <u>Mueller v. Tech. Devices Corp.</u>, 8 N.J. 201, 207 (1951); <u>LaPlace v. Briere</u>, 404 N.J. Super. 585, 596 (App. Div. 2009); <u>Farrow v. Ocean Cty. Tr. Co.</u>, 121 N.J.L. 344, 348 (Sup. Ct. 1938). Moreover, it is understood in this state to be consistent with the Restatement's expression of conversion's requirements. <u>See, e.g.</u>, <u>Chi. Title Ins. Co. v. Ellis</u>, 409 N.J. Super. 444, 454 (App. Div. 2009) ("Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." (quoting <u>Restatement (Second) of Torts</u> § 222A(1))).

Traditionally applied to chattels, conversion applies to money, provided that "the money ha[s] belonged to the injured party and that it be identifiable." <u>Id.</u> at 455-56. A defendant may be liable for conversion even when "he acted in good faith and in ignorance of the rights or title of the owner." <u>Id.</u> at 457 (quoting <u>McGlynn v. Schultz</u>, 90 N.J. Super. 505, 526 (Ch. Div. 1966)). "Thus, intentional or negligent acts can give rise to a conversion cause of action." <u>Lembaga Enters., Inc. v. Cace Trucking & Warehouse, Inc.</u>, 320 N.J. Super. 501, 507 (App. Div. 1999).

Prior to bringing a conversion action, a plaintiff has some responsibilities.

20

> It is well settled that where possession of chattels is lawfully acquired, a demand therefor and refusal to deliver is generally necessary before an action in . . . conversion will accrue. A demand and refusal do not of themselves amount to a conversion, but are evidence from which a jury may find that a conversion had been committed. The demand, however, must be made at a time and place and under such circumstances as defendant is able to comply with if he is so disposed, and the refusal must be wrongful. . . . The burden of proof of a demand and a refusal rests upon the plaintiff.

> [Mueller, 8 N.J. at 207-08.]

Thus, to establish conversion when the property is lawfully acquired, demand becomes a critical step. Ibid. The analysis in such a setting devolves into serial yet interrelated steps.

As noted, conversion is the intentional exercise of dominion and control over chattel that seriously interferes with the right of another to control that chattel. See, e.g., Chi. Title, 409 N.J. Super. at 454 (citing Restatement (Second) of Torts § 222A(1)). Thus, there must first be an assessment of whether defendant has independent dominion and control over the subject property, as that inquiry affects other requirements for this tort. Additionally, where the defendant lawfully acquired plaintiff's property, the plaintiff must show that he demanded the return of the property and that the defendant refused compliance. Mueller, 8 N.J. at 207-08; see also Temple Co. v. Penn Mut. Life Ins. Co., 69 N.J.L. 36, 37 (Sup. Ct. 1903).

21

Where possession is initially lawful, it is not tortious unless and until the possessor acts in a way that conflicts with the true owner's rights. Temple Co., 69 N.J.L. at 37. Thus, for example, where possession begins lawfully and the true owner does not subsequently make a demand for the property, the possessor's actions are not tortious in the sense of a conversion because they have yet to conflict with the true owner's rights. However, if the owner demands return of the property and the possessor refuses, then a conversion has occurred. The possession is no longer lawful and the refusal to comply with the demand creates a substantial interference with the owner's rights.

The demand is the linchpin that transforms an initial lawful possession into a setting of tortious conduct. Accordingly, in such circumstances, a demand is essential; a claimant must make a demand "at a time and place and under such circumstances as defendant is able to comply with if he is so disposed, and the refusal must be wrongful." Mueller, 8 N.J. at 207. The demand puts the defendant on notice and is crucial when the initial possession is lawful or when it cannot be said that the holder is exercising independent dominion or control. Ibid. That said, there are circumstances, to be sure, where demand may be futile, but that is and must be viewed as an exception. Id. at 207-08.

In this matter, the firm held the contested wired funds in its trust account for its client who was in the midst of a commercial real estate transaction. Where, as here, the firm received the wired funds into its trust account and received no limiting instructions or conditions with respect to the wired money from Rightmatch -- or Meisels -- we do not find that the firm exercised independent dominion or control over Meisels's now-claimed funds when the firm acted in accordance with its client's direction concerning the funds' disbursement. The firm's actions in respect of the trust fund-held monies do not constitute independent dominion or control.

Funds held in an attorney's trust account for its client are the client's funds, not the firm's. Here, with no knowledge of a competing claim to the funds -- and, indeed, no knowledge whatsoever about Meisels and his role in the transaction -- the firm acted appropriately in adhering to the client's directions concerning funds over which the firm did not have independent ownership or interest; in other words, the firm had no separate dominion or control over the funds. The firm acted in accordance with its reasonable understanding of who did control the direction of the funds' use -- the client. That conclusion is consistent with past case law. See, e.g., N. Haledon Fire Co. No. 1 v. Borough of North Haledon, 425 N.J. Super. 615, 621-22, 631

23

(App. Div. 2012) (holding that no conversion occurred where fund administrator carried out tasks delegated to it under documents governing administration of a program involving funds for volunteer firefighters and because it "acted at the direction of the Borough, as required by the contract[, and] did not exercise any independent dominion or control over" the monies of plaintiff volunteer firefighters).

In sum, Meisels cannot prove that the firm itself exercised independent dominion and control over his funds. That requirement for a conversion claim is lacking in this matter.

The lack of independent dominion and control, moreover, renders more serious the lack of demand here. The demand requirement was essential in this matter because money is fungible and, therefore, the obligation of a plaintiff to make a demand of the firm for the money was not useless or futile. It would have been the means to alert the firm that a competing claim existed and would have triggered the firm's obligation to reasonably inquire further, and perhaps seek judicial assistance, before embarking on fulfillment of a client's direction. Violation of the demand might then create the tort of conversion. Indeed, the firm was denied the opportunity, until five years after this transaction was complete, to address a dispute about the monies. The Appellate Division

24

misperceived the importance of the demand requirement in these circumstances when it reinstated plaintiff's conversion claim.

Only when an attorney misdirects or misappropriates funds, or when an attorney has acted contrary to a known, competing claim -- or a competing claim that reasonably should have been known -- can there be an independent dominion or control over the funds by the firm to the repudiation of the rights of the proper owner.

In short, both claims of alleged tortious conduct should have been dismissed because neither cause of action is presented on these facts. We reverse on the conversion claim and order that it be dismissed.

V.

The judgment of the Appellate Division is affirmed in part and reversed in part. We affirm the dismissal of the breach of fiduciary duty claim, and we reverse on the conversion claim and order its dismissal.


CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE LaVECCHIA's opinion.

25